65 So.2d 178

**COSBY v. MOORE.**

4 Div. 729.

Supreme Court of Alabama.
March 19, 1953.

Rehearing Denied May 28, 1953.

Robt. B. Albritton and J. M. Albritton and Albrittons & Rankin, Andalusia, for appellant.

F. B. McGill and A. R. Powell, Jr., Andalusia and J. C. Fleming, Elba, for appellee.

44

PER CURIAM.

This is a contest instituted by appellant against appellee of his election as mayor of the City of Opp, Alabama. From a judgment dismissing the proceeding contestant has appealed.

■ Appellee has moved the Court to dismiss the appeal on the ground that all the parties against whom the judgment was rendered did not appeal, and notice was not given them as provided in section 804, Title 7, Code. The judgment rendered in the trial court was against the named sureties on the instrument securing the costs. Under authority of Sellers v. Smith, 143 Ala. 566, 39 So. 356, they should join in the appeal to this Court, or be subject to section 804, supra. But those not joining in the appeal have appeared and waived the notice referred to and united in the assignments of error. That procedure satisfies section 804, supra. Lane v. Henderson, 232 Ala. 122, 167 So. 270; Barker v. Barker, 249 Ala. 322, 31 So.2d 357.

■ Appellee insists here, as he did in the trial court, that the security for costs given when the contest was filed was insufficient to confer jurisdiction of it on that court. That of course is a jurisdictional requirement. It is insisted that the statute requires a formal bond signed by a principal and sureties. The statute, section 238, Title 17, Code, requires contestant at the time of commencing the contest to "give security for the cost of such contest, to be filed and approved as in this article provided". Other provisions in the statutes refer to the *sureties* for cost. Sections 242 and 251, Title 17, Code. There is no requirement as to the form of the security, provided it secures all the costs without limit in amount. Wilson v. Duncan, 114 Ala. 659, 21 So. 1017; Lowery v. Petree, 175 Ala. 559, 57 So. 818. Reliance is had on Painter v. Mauldin, 119 Ala. 88, 24 So. 769. But that opinion was closely limited in Hannis Distilling Co. v. Lanning, 191 Ala. 280, 68 So. 137, so that it has no application to the present situation. Birmingham News Co. v. Moseley,

225 Ala. 45, 141 So. 689. And it is pointed out in Mayfield v. Court of County Commissioners of Tuscaloosa County, 148 Ala. 548, 41 So. 932, that when the requirement is to give security for costs (with no supersedeas) it is only necessary that the surety should so acknowledge himself, and that the principal need not sign. The authorities cited support the conclusion. Spencer v. Thompson, 24 Ala. 512; Crump v. Wallace, 27 Ala. 277; Satterwhite v. State, 28 Ala. 65; Marshall v. Croom, 50 Ala. 479. See Mancill v. Thomas, 216 Ala. 623, 144 So. 223; Clary v. Cassels, 258 Ala.Sup. 183, 61 So.2d 692.

This contention by appellee is not well supported, and the motion to dismiss is overruled.

We now reach the pivotal question which was decisive in the trial court. That is, that contestant had abandoned the office and was therefore estopped to conduct this proceeding contesting the election of appellee as mayor of Opp, Alabama, a city of less than 6,000 inhabitants. Appellant, who was then mayor of said city, was a candidate for re-election to such office in an election held on September 15, 1952. Appellee was also a candidate for said office in said election. On September 16, 1952, the mayor and councilmen of Opp in session canvassed the returns made by the inspectors of the election and found and declared that appellee had, according to those returns, received a majority of the votes cast for mayor and was accorded the winner over appellant. Appellant on October 3, 1952 filed a contest of said election, which is now under consideration, on the ground of illegal votes cast for appellee in said election. On October 6, 1952, appellee took the oath of office and has held it pending this proceeding.

The election was held under an Act approved July 6, 1945, General Acts 1945, p. 699; Title 37, section 34 plus pocket part, Code. The time for holding the election is there fixed. Section 34(2). Notice of it must be given by the mayor and clerk in the form and in the manner prescribed. Section 34(3). The mayor shall make duplicate copies of the list of qualified voters who reside in the city limits. Sec-

tion 34(8). If the mayor is a candidate said duties as to the registration list shall be performed by a disinterested person appointed by the governing body of the city. Section 34(10). (This was done by a disinterested person so appointed.) There is no disqualification of the mayor prescribed except in section 34(10), and that only applies to the registration list. After the election the inspectors shall count the ballots and certify the results in their respective polling places to the council of the city. They (inspectors) shall count the ballots and their certificate of the results must be placed in a box furnished for that purpose and sealed and delivered to the clerk of the city. Section 34(14). Within three days after the delivery of the boxes, "the council shall proceed to open the same and canvass the returns" and declare the results. Section 34(16).

A contest of such election may be conducted on the same grounds and in the same manner provided for contesting the election of the judge of probate. Section 34(17), Pocket Part, Code. That is provided for in section 231, Title 17, and it may be by one who at the time of the election is a qualified elector, and it must be begun within twenty days after the result is declared. Section 238, Title 17, Code. The contestee must make answer within five days after service. Section 245, Title 17, Code.

The instrument of contest alleged that the contestant, who is this appellant, was a resident citizen and qualified elector of said city, county and State, and that he was a candidate in said election for the office of mayor. It was filed within the twenty day period required by section 238, Title 17, Code, accompanied with security for costs, to which we have referred above.

There was much pleading, but the issues may be concisely stated as they are embraced in pleas A, B, C, D, E, F and G. They all rely primarily upon the case of Rainwater v. State, 237 Ala. 482, 187 So. 484, 121 A.L.R. 981, which applied the principle of abandonment in respect to quo warranto seeking to oust one who assumed an office by virtue of an election not authorized by law.

The matters set up in the pleas, on which an abandonment is based, are that the mayor was a member of the council which on September 8, 1952 passed a resolution prescribing the voting places and naming the election officers for each of the three election boxes. The mayor and five councilmen participated and voted. (The evidence of Jerry Adams attached to plea G showed that each of them [six] designated one of the election officers at each box. But the resolution showed that the mayor and councilmen sitting as such passed the resolution appointing them.) The election being held on September 15, 1952, there was a special meeting of the mayor and councilmen on September 16, 1952, when proceedings were had to canvass the returns. The minutes of that meeting were adopted by the council and approved by Travis Cosby (contestant) as mayor, and by Page as the city clerk. An appropriate resolution was passed at that meeting, but the mayor (Cosby) did not vote on it, though he presided and declared the resolution passed. It canvassed the returns and showed the number of votes cast for each of the candidates for mayor and councilmen. This included the votes cast for some of the incumbent councilmen, also candidates in the election, to wit, Adams, Dorsey and Woodham, who likewise participated in the meeting. The resolution declared the result as shown by the canvass, including contestee as elected mayor,—all for a term beginning the first Monday in October 1952. The contestee was sworn in as such mayor on October 6, 1952, (contestant was not present), and assumed the duties of said office, and has since then continued to serve as such; and that on said October 6, 1952, contestant voluntarily relinquished the office of mayor.

In plea F it is alleged that contestant on August 14, 1952, then the mayor of Opp, published or caused to be published and certified by him an official poll list of the voters of the city; and on August 28, 1952, likewise caused to be published a supplementary poll list. This is alleged in addition to the matters referred to above.

In plea G it is alleged the additional fact that prior to the election, contestant as

mayor did partially supervise and handle the casting of a portion of the absentee ballots. Attached to plea G is a copy of the testimony given by Edna Hall, who served as stenographer for the city clerk, and of Jerry Adams who was a member of the city council. Miss Hall's testimony thus attached shows that contestant was present when a certain number of the absentee votes were cast. The material part of Adams' testimony, so attached, has been stated as shown above.

From those facts the pleas concluded that contestant was (1) estopped from being reinstated by the judgment of the court, and (2) had abandoned the office of mayor, and (3) was estopped from invoking the jurisdiction of the court to oust contestee from the office of mayor.

There was a proposal to amend the contest by adding other qualified electors of the town as contestants, and thereafter to make replication to the pleas. But no new issues are presented by the replications. We will later discuss the amendment to the contest.

The demurrers to the special pleas present the real controversy involved on this appeal. They were overruled. Issue was joined on the pleas, to which we have referred. There is no material conflict in the evidence as to their averments of fact. The trial court upon a consideration of the evidence adjudged that contestant (plaintiff) is barred and estopped from instituting and maintaining this action, and that the petition be dismissed; and, further, that contestee (defendant) is authorized and empowered to administer the duties of the office of mayor of Opp.

There are some well settled principles of law which seem to have application and which we think it appropriate here to rehearse. Election contests are not of common law origin, but are creatures of statutes which prescribe the terms and conditions of their exercise. Public offices are for governmental purposes and are a public trust, not for the benefit of an individual, and not subject to contract nor to property rights. Scheuing v. State ex rel. Attorney General, 177 Ala. 162, 59 So.

160; Lovejoy v. Beeson, 121 Ala. 605, 25 So. 599.

Canvassing the returns of an election is a ministerial act, and when it is completed and the results declared an unsuccessful candidate may contest the election. Pope v. Howle, 227 Ala. 154, 149 So. 222; Hudmon v. Slaughter, 70 Ala. 546; Leigh v. State ex rel. O'Bannon, 69 Ala. 261.

The canvassers are controlled by the returns of the inspectors and have no power to go behind them or inquire into fraud or irregularity, but they must add together the number of votes each candidate received in the several voting precincts, according to the certificates of the inspectors, and declare the result; and are subject to mandamus to compel a performance when necessary. Their duties are confined to computation. Leigh v. State ex rel. O'Bannon, supra; 29 C.J.S., Elections, § 237, pp. 341, 342. In the absence of a constitutional or statutory provision to the contrary, the fact that a member of the canvassing board is himself a candidate for office in the election does not require that some other person be substituted in his place. State ex rel. Hutchins v. Tucker, 106 Fla. 905, 143 So. 754 (11 and 12); 29 C.J.S., Elections, § 236, p. 339, note 13.

One insistence made by appellant is that the contest is in truth conducted for the State, and the principle of the Rainwater case, supra, does not apply to the State. We find some pertinent authorities on that contention, to which we will now refer.

This Court has held that a proceeding in the nature of quo warranto to exclude one from holding a county office is such as that the State has no interest and is only a formal party. The attorney general was permitted to file a brief, but it was held that he had no right to do this or to be a party. If he elects to be a party, it is as an individual. Baxter v. State ex rel. Metcalf, 243 Ala. 120, 9 So.2d 119. Whereas, in Ex parte Hartwell, 238 Ala. 62, 188 So. 891, it was held that an election contest is one in which the public has an interest and is for the public good and that the con-

testant cannot on his volition dismiss one which he instituted.

It would seem that the status of the law in respect to such matters is rendered cloudy by those two cases. See, also, Willis v. Buchman, 240 Ala. 386, 199 So. 892, 132 A.L.R. 1179; State ex rel. Chilton County v. Butler, 225 Ala. 191, 142 So. 531; Tuscaloosa Scientific & Art Ass'n v. State ex rel., 58 Ala. 54, 61. The principle relied on in the Rainwater case, supra, has no application to the State as a body politic or to a city. Webb v. City of Demopolis, 95 Ala. 116, 13 So. 289, 21 L.R.A. 62.

The exception is where there is an express grant. Persons representing the State (or city) can bind the State (or city) when they have a grant of such power by law. State ex rel. Lott v. Brewer, 64 Ala. 287, 298; Greenwood v. State ex rel. Bailes, 230 Ala. 405, 407(4), 161 So. 498. But we need not pursue that discussion as we think other principles are controlling.

 "An estoppel cannot exist where the knowledge of both parties is equal, and nothing is done by the one to mislead the other." (That refers to an equitable estoppel.) Webb v. City of Demopolis, supra [95 Ala. 116, 13 So. 297]. "Its usual presentation is, when one person by his words, acts, conduct, or silence, induces another, on the faith thereof, to pledge his credit, incur a liability, or part with something valuable" * * *. "It rests at last, for its vindication, on the manifest idea, that to allow such representation to be gainsaid, would be a fraud on him who had thus acted, believing it to be true." Leinkauff v. Munter, 76 Ala. 194, 198. It has been expressed in many different forms, but the foregoing fairly embraces all its elements. 31 C.J.S., Estoppel, § 66, p. 254, et seq.; Hinds v. Federal Land Bank, 237 Ala. 218, 186 So. 153.

The trial judge, in his final judgment to which we have referred, expressed the opinion that he believes that the issue here raised is ruled by the logical implications and holding in the Rainwater case, supra. In that case an election was called by the council at a time not authorized by law. This was not a mistake of fact but ignorance of law. The election was called and held on September 19, 1938, when it should not have been held until September 1940. The returns when made and canvassed were in all respects proper and legal except as to the date. The result was declared and the elected officers assumed their duties as such on October 1, 1938. The existing incumbents surrendered the offices to the newly elected men and withdrew from the same. By legal right they were due to stay in office until after an election in 1940, and until October 1, 1940. Quo warranto was filed November 10, 1938 by some of the old incumbents, whose term so extended, to oust those who had been elected September 19, 1938 and who went into office October 1, 1938, on the ground that there was no legal authority to hold the election in 1938. So that, one month and ten days had expired after they went into office until the quo warranto was filed. The Court held that the time to hold such an election fixed by law could sometimes be treated as directory, and a court could refuse to inquire into the validity of the election in an exercise of sound judicial discretion. But the result reached in the Rainwater case was not based on that theory. The opinion then observed that the other phase of the case is whether the facts showed an *abandonment* of the office by relators and whether they were therefore estopped to invoke the court's jurisdiction. It then noted that an office may be vacated by resignation or *abandonment*. Section 2697, Code 1923, Title 41, section 160, Code 1940. Abandonment is not there expressed in terms, but it was shown to be a species of resignation, and that it may be indicated by voluntarily surrendering the office to another under a mistaken belief that the latter has been duly elected; also that [237 Ala. 482, 187 So. 488]:

"if the incumbent, after competing with an opponent as a candidate in an election, *is defeated,* and by official action recognizes the election of his opponent and surrenders the office to him, he, as a matter of law, abandons the office and is estopped to invoke the court's jurisdiction to inquire into the

validity of such election, either to oust his opponent or have himself reinstated in the office. Reg. v. Greene, 2 Q. B. 460, 6 Juris. (1842) 777.

"This is a leading case, decided in 1842, in a quo warranto brought under the English statute after which our quo warranto statutes are patterned, adopted in the Code of 1852.

"In the last cited case Lord Denman, C. J., speaking, observed: 'I think the objection must prevail. Authorities are not very material here: the objection rests on a principle on which this court has always acted, that where a person has *voluntarily concurred in inducing another to enter upon the exercise of an office,* he can not afterwards come to this court to expel him from it.' The Jurist, Vol. 6, p. 777. The other three Judges, in separate opinions, concurred.

"This decision is made the basis for the text of Herman on Estoppel to the effect '*Inducing one to act as an officer,* or a party who has concurred in inducing one to act, is estopped from making an application in the nature of a quo warranto to eject him from the office.' Herman on Estoppel (1871 Ed.) p. 535, § 574." (Italics supplied.)

█ We quote also from Wilkinson v. City of Birmingham, 193 Ala. 139, 147, 68 So. 999, 1002, as follows:

"Abandonment of office, that is, an abandonment which will operate to create a vacancy, is not wholly and always a matter of actual intention. It may result from a total and complete abandonment of duties of such continuance that the law will infer a relinquishment on the principle that every man must be presumed, whether so in fact or not, to intend the inevitable consequences of his intentional acts."

The foregoing is an epitome of the principle. But we think the difference in the facts of the instant case leads to a different result from that reached in the Rainwater case, supra. That is, that in it there was no semblance of legality. Relators were there charged by law with knowledge that

on its face the proceedings show that they were legally the incumbents for the succeeding two years, and that respondents did not have any legal right to take over the offices. Being charged with this knowledge, they recognized the validity of the election by voluntarily abandoning the offices and waiting for a month and ten days before seeking a reinstatement by the court. The fact that relators participated in calling and holding the election and declaring the result is not the controlling feature of that case. The controlling feature was the fact of an abandonment of the office by relators, thereby inducing another to enter upon an exercise of its functions, but knowing that he had no duty to surrender it.

This contest was filed October 3, 1952, before contestee, on October 6, 1952, undertook or was authorized to qualify under said election. The term began the first Monday in October. Title 37, section 27, Code. So that, any failure of contestant to perform the duties of the office after October 6, 1952, was pending a contest which had been filed by him claiming that he had been elected by a majority of the legal votes. At the time contestee qualified, he knew of the contest, and knew that contestant had not abandoned his office, or that he intended to do so. In canvassing the returns and declaring the result of the canvass, the council was only doing a ministerial, mathematical act, and had no right to inquire into the legality of the votes and made no representation thereby or otherwise that the votes cast for contestee were legal. In qualifying on the night of October 6th, contestee was not misled by contestant.

█ A certificate of election, given ministerially by the canvassing authority to the candidate, shown by the returns to have received the required majority, is evidence of his election, subject to a contest when authorized by law or quo warranto when appropriate. Moulton v. Reid, 54 Ala. 320; Head v. Hood, 214 Ala. 353, 107 So. 854; Baker v. Conway, 214 Ala. 356, 108 So. 18.

█ It cannot be said to be a voluntary abandonment of the office for appellant to

recognize the prima facie effect of such certificate when a contest of it on statutory grounds is filed and prosecuted by him in due time. That status does not contain the elements of an abandonment. Wilkinson v. City of Birmingham, supra.

After contestee filed some of his pleas of estoppel and abandonment, certain persons sought to intervene as contestants. This was denied by the court. But they have not pursued the course open to them to review that ruling. Contestant then filed an amendment adding those parties as contestants. The court sustained contestee's demurrer to that amendment. It was filed more than twenty days after the result of the election was declared.

An election contest cannot be amended after the time fixed by law for filing it by adding additional grounds not stated in the original charges. Black v. Pate, 130 Ala. 514, 30 So. 434; Pearson v. Alverson, 160 Ala. 265, 49 So. 756. But an amendment clarifying grounds already stated, and one curing a defect in the bond given as security for costs, may be made. after the expiration of that period. Groom v. Taylor, 235 Ala. 247, 178 So. 33.

The addition of more contestants, each of whom is a resident and qualified elector, was not for the purpose of curing a jurisdictional fault, and did not put an additional burden on defendant. But we think there cannot be an entire substitution of parties contestant, as was later sought to be effected. Section 251, Title 17, Code, should not be so broadly construed. We think the court erred in sustaining the demurrer to the amendment adding parties contestant, but was without error in denying an entire change of parties contestant.

The rulings of the court in respect to pleas A, B, C, D, E, F and G cannot be sustained on the foregoing discussion.

The foregoing opinion was prepared by FOSTER, Supernumerary Judge of this Court while serving on it at the request of the CHIEF JUSTICE, under authority of Title 13, section 32, Code, and it was adopted by the Court as its opinion.

For the errors indicated, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and BROWN, SIMPSON and GOODWYN, JJ., concur.