United States Court of Appeals,

Eleventh Circuit.

Nos. 94-7138, 94-7155.

Larry ROE, Perry O. Hooper, Sr., James D. Martin, Plaintiffs-Appellees,

v.

STATE OF ALABAMA, By and Through its Attorney General James EVANS, Defendant-Appellant,

James Bennett, Honorable Alabama Secretary of State, Defendant-Appellant,

John W. Davis, a representative of a class of persons who have sought to have their ballots counted in an action in the Circuit Court of Coosa County, Alabama, Defendant-Appellant,

Mobile County Appointing Board, Lionel W. Noonan, Defendants,

Wilcox County Appointing Board, Jerry Boggan, Defendants-Appellants,

O.P. Woodruff, Honorable Probate Judge of Lowndes County, Willie Vaughner, Honorable Sheriff of Lowndes County, et al., Defendants,

Elsie Davis, Honorable Circuit Clerk of Lowndes County, W.A. Kynard, Honorable Circuit Clerk of Dallas County, Mary C. Moore, Honorable Circuit Clerk of Perry County, Curtis J. Elzie, Honorable Circuit Clerk of Bullock County, David S. Nix, Honorable Circuit Clerk of Barbour County, Devon Kiker, Honorable Circuit Clerk of Russell County, Eddie D. Mallard, Honorable Circuit Clerk of Macon County, Debra P. Hackett, Honorable Circuit Clerk of Montgomery County, Barbara Craft, Honorable Circuit Clerk of Calhoun County, Polly Conradi, Honorable Circuit Clerk of Jefferson County, Billy S. Yates, Honorable Circuit Clerk of Etowah County, Earl Carter, Honorable Circuit Clerk of Jefferson County, Bessemer Division, Carolyn M. Smith, Honorable Circuit Clerk of Cherokee County, Jean Browning, Honorable Circuit Clerk of St. Clair County, Samuel L. Grice, Honorable Circuit Clerk of Talladega County, Jackie Calhoun, Honorable Circuit Clerk of Baldwin County, Jackie B. Howard, Honorable Circuit Clerk of Washington County, Susan F. Wilson, Honorable Circuit Clerk of Mobile County, Donald R. Gibson, Honorable Circuit Clerk of Choctaw County, Wayne Brunson, Honorable Circuit Clerk of Clarke County, John Sawyer, Honorable Circuit Clerk of Monroe County, James D. Taylor, Honorable Circuit Clerk of Escambia County, Brenda M. Peacock, Honorable Circuit Clerk of Pike County, Ann W. Tate, Honorable Circuit Clerk of Crenshaw County, Bobby T. Branum, Honorable Circuit Clerk of Butler County, Jean E. Riley, Honorable Circuit Clerk of Conecuh County, Julia L. Trant, Honorable Circuit Clerk of Houston County, Jim Ellis, Honorable

Circuit Clerk of Coffee County, Roger A. Powell, Honorable Circuit Clerk of Covington County, Connie Burdeshaw, Honorable Circuit Clerk of Henry County, Willie Powell, Honorable Circuit Clerk of Wilcox County, Veleria Thomley, Honorable Circuit Clerk of Geneva County, Bettye B. Garrett, Honorable Circuit Clerk of Dale County, Vinita B. Thompson, Honorable Circuit Clerk of Walker County, James E. Renfroe, Honorable Circuit Clerk of Fayette County, Carl F. Woods, Honorable Circuit Clerk of Lamar County, Seyaine Sealy, Honorable Circuit Clerk of Marengo County, Jack T. Pate, Honorable Circuit Clerk of Pickens County, Johnnie Knott, Honorable Circuit Clerk of Greene County, Carole Smith, Honorable Circuit Clerk of Sumter County, Betty Gayle Pate, Honorable Circuit Clerk of Hale County, Kim S. Benefield, Honorable Circuit Clerk of Randolph County, Frank Lucas, Honorable Circuit Clerk of Tallapoosa County, Fred Posey, Honorable Circuit Clerk of Autauga County, Horace D. Perry, Honorable Circuit Clerk of Cleburne County, Robert Giddens, Honorable Circuit Clerk of Clay County, Phyllis Cumbee, Honorable Circuit Clerk of Chambers County, Earl Sayers, Honorable Circuit Clerk of Elmore County, Dan Reeves, Honorable Circuit Clerk of Shelby County, Doris T. Turner, Honorable Circuit Clerk of Tuscaloosa County, Mike Smith, Honorable Circuit Clerk of Chilton County, Gerald D. Parker, Honorable Circuit Clerk of Coosa County, R.L. Foster, Honorable Circuit Clerk of Bibb County, Billy D. Harbin, Honorable Circuit Clerk of Madison County, Jimmy Lindsey, Honorable Circuit Clerk of DeKalb County, Jean Albert Scott, Honorable Circuit Clerk of Marshall County, Charles Page, Jr., Honorable Circuit Clerk of Limestone County, Leonard V. Griggs, Honorable Circuit Clerk of Jackson County, J.T. Newton, Honorable Circuit Clerk of Franklin County, James O. Garrard, Honorable Circuit Clerk of Marion County, W.F. Bailey, Honorable Circuit Clerk of Winston County, Robert G. Bates, Honorable Circuit Clerk of Cullman County, Michael E. Criswell, Honorable Circuit Clerk of Blount County, C. Phillip Bowling, Honorable Circuit Clerk of Colbert County, Kenneth C. Austin, Honorable Circuit Clerk of Lauderdale County, W. Larry Smith, Honorable Circuit Clerk of Lawrence County, Cleo D. Teague, Honorable Circuit Clerk of Morgan County, Defendants-Appellants.

Jan. 4, 1995.

Appeals from the United States District Court for the Southern District of Alabama. (No. CV 94-885-AH-S), Alex T. Howard, Jr., Judge.

Before TJOFLAT, Chief Judge, EDMONDSON and BIRCH, Circuit Judges.

PER CURIAM:

In Alabama, a person voting by absentee ballot must execute an "affidavit" in the presence of a " "notary public or other officer authorized to acknowledge oaths or two witnesses 18 years of age or

older.' "  Ala.Code § 17-10-7 (1980).[1]  Section 17-10-9 of the code prescribes the physical form of the ballot and the affidavit.  The affidavit form must be printed on an envelope.  A second, smaller envelope, which does not identify the absentee voter and contains the voter's completed ballot, must be sealed inside the affidavit envelope, and that envelope must then be mailed to the appropriate county election official.  *See* Ala.Code § 17-10-9 (1980).

The affidavit envelopes are held unopened until noon on election day.  Beginning at noon, the "absentee election manager" delivers the envelopes to the "election officials" for counting.  They, in turn, with poll watchers present, call the name of each voter casting an absentee ballot, "open each affidavit envelope, review the affidavit to certify that such voter is entitled to vote and deposit the plain envelope containing the absentee ballot into a sealed ballot box."  Ala.Code § 17-10-10 (1980).  These ballots are then "counted and otherwise handled in all respects as if the said absentee voter were present and voting in person."  *Id.*[2]

---

[1]The contents of this affidavit are prescribed by § 17-10-7 of the Alabama Code, the full text of which appears in the appendix to this opinion.

[2]The Secretary of State's Election Handbook for 1994 interpreted these requirements as follows:

> The task of absentee poll workers on election day falls into two phases.  Beginning at noon (or later) they are to open the affidavit envelopes, review the affidavits, and deposit the plain envelopes in a sealed ballot box.
>
> If, upon examination, the affidavit *is not properly witnessed or notarized,* is not signed by the voter, or does not otherwise contain sufficient information to determine that the person is a qualified elector and is entitled to vote absentee, the ballot should not be counted [Attorney General's opinion 80-

Alabama law also provides a method of contesting statewide elections such as those involved in this case. Section 17-15-50 of the Alabama Code provides that any elector may contest certain statewide elections by filing a written statement and a bond with the state legislature within ten days after the Speaker of the House of Representatives has opened the election returns. Ala.Code § 17-15-50 (1940).[3] The legislature is then required to elect a commission of three senators and five representatives to take testimony submitted in the contest. *Id.* § 17-15-53. The commission is provided with subpoena and contempt powers. *Id.* §§ 17-15-55, 17-15-57. "[T]he final judgment of the joint convention [of the House and Senate] upon the contest shall [be] effective as

00551]. Otherwise, the ballot should be deposited into a sealed ballot box.

*Alabama Election Handbook* 257 (6th ed. 1994) (citation in original) (emphasis added). The Attorney General's Opinion cited in the election handbook states:

If, upon examination, the affidavit obviously does not comply with Alabama law, that is, if it is not properly witnessed or notarized, is not signed by the voter, or does not otherwise contain sufficient information to determine that the person is a qualified elector and is entitled to vote absentee, the ballot should not be counted.

80 Op. Att'y Gen. 551 (1980). The Secretary of State, James Bennett, testified in the proceedings below that it was "his understanding that ballots that are not witnessed by two people over the age of 18 or notarized [were] not counted prior to the Montgomery County [Circuit] Court case," *Odom v. Bennett,* No. 94-2434-R (Montgomery County Cir.Ct., filed Nov. 16, 1994).

[3]The statewide offices for which elections are contestable in the state legislature are Governor, Secretary of State, Auditor, Treasurer, Attorney General, Commissioner of Agriculture and Industries, Justices of the Supreme Court, and Judges of the Court of Appeals. Ala.Code § 17-15-50.

a judgment and shall have the force and effect of vesting the title to the office ... in the person in whose favor the judgment may be rendered."  *Id.* § 17-15-52.[4]  Thus, the legislature is the final

---

[4]The Alabama legislature has ensured that the decision of the joint convention of the House and Senate shall be conclusive by providing that no judge or court shall have jurisdiction to decide election contests involving the specified statewide offices.  Section 17-15-6 provides:

> No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute;  and any injunction, process or order from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected ... save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any officer or obeyed by any person....

Ala.Code § 17-15-6.  This provision is especially significant in light of the common law of Alabama:

> [E]lection contests exist only by virtue of statutory enactment and such statutes are to be strictly construed.  [*Groom v. Taylor,* 235 Ala. 247, 178 So. 33 (1938) ].  "The right to contest an election is not a common-law right (*Cosby v. Moore,* 259 Ala. 41, 65 So.2d 178 [ (1953) ] ).  Elections belong to the political branch of the government, and, in absence of special constitutional or statutory provisions, are beyond the control of judicial power."  29 C.J.S. Elections § 246. Further at § 247 the rule is stated that statutes providing for election contests "should be strictly construed or observed as to those provisions for inaugurating the contest and which are necessary to jurisdiction [citing *Walker v. Junior,* 247 Ala. 342, 24 So.2d 431 (1945);  *Groom,* 235 Ala. 247, 178 So. 33]....  An election contest being purely statutory, the courts are limited in their investigation to such subjects as are specified in the statutes.  The remedy is not to be extended to include cases not within the language of the statute;  and the right of contest is not to be inferred from doubtful provisions."

*Longshore v. City of Homewood,* 277 Ala. 444, 171 So.2d 453,

arbiter of statewide office contests.

On November 8, 1994, Alabama held a general election for several statewide offices, including the offices of Chief Justice of the Supreme Court of Alabama and Treasurer of the State of Alabama. Between 1000 and 2000 absentee voters failed to properly complete their affidavits, either by failing to have their signatures notarized or by failing to have them witnessed by two people. Pursuant to the statutory mandate of section 17-10-10, and the statewide practice prior to the general election, these ballots were not counted: they were not removed from their affidavit envelopes and, therefore, were not placed in the ballot box.[5]

The elections for Chief Justice and Treasurer, especially the former office, were quite close. Informal estimates place the two candidates for Chief Justice a mere 200 to 300 votes apart without counting the contested absentee ballots. Following the general election, two individuals who voted absentee, on behalf of themselves and similarly situated absentee voters, filed a complaint in the Circuit Court for Montgomery County, Alabama, seeking an order that the contested absentee ballots be counted. *Odom v. Bennett,* No. 94-2434-R (Montgomery County Cir.Ct., filed Nov. 16, 1994). On November 17, 1994, the circuit court entered a "Temporary Restraining Order" requiring that "those persons counting the absentee ballots for each county shall count each

_____

455 (1965).

[5]We refer to any ballot that was accompanied by an unnotarized or unwitnessed affidavit—whether or not the ballot has been removed from its affidavit envelope—as a "contested absentee ballot."

ballot which contains: (1) the place of residence of the person casting the ballot; (2) the reason for ... voting by absentee ballot; and (3) the signature of the voter. *Absentee ballots may not be excluded from being counted because of a lack of notarization or a lack of witnesses.*" (Emphasis added). The circuit court also ordered the Secretary of State to refrain from certifying the election until the vote totals, including the contested absentee votes, are forwarded to him; after receiving these revised totals, the Secretary must certify the election.[6] Following the entry of this temporary restraining order, the election officials began counting the contested absentee ballots.[7]

On December 5, 1994, the United States District Court for the

---

[6]On December 9, 1994, the circuit court entered a preliminary injunction incorporating its "Temporary Restraining Order" and further elaborating on the reasons for the court's conclusion that the contested absentee ballots were required to be counted under Alabama law. The circuit court felt that *Wells v. Ellis,* 551 So.2d 382, 383 (Ala.1989), and *Williams v. Lide,* 628 So.2d 531, 536 (Ala.1993), required that the contested absentee ballots be counted because the affidavit envelopes accompanying them were in "substantial compliance" with § 17-10-7. The circuit court determined that it had the authority to enter the injunction despite the jurisdictional bar of § 17-15-6, quoted *supra* note 4, because the circuit court was exercising its power for the "limited purpose of ordering public officials to comply with legal principles." *Odom v. Bennett* (citing *Sears v. Carson,* 551 So.2d 1054, 1056 (Ala.1989)).

[7]The parties indicated at oral argument before this panel on December 29 that 30 counties have removed the contested absentee ballots from their corresponding affidavit envelopes, placed the ballots in the ballot pool, recounted the votes, and forwarded the revised results to the Secretary. In the remaining 37 counties, the contested absentee ballots are in various conditions: some remain in their unopened affidavit envelopes; some have been removed from their affidavit envelopes but remain unopened and uncounted; and some have been removed from their affidavit envelopes, opened and counted. As to the ballots in the latter two groups, each ballot envelope, or ballot, has been placed with the affidavit envelope that contained it.

Southern District of Alabama, in a suit brought under 42 U.S.C. § 1983 (1988)[8] by Larry Roe, a voter suing on behalf of himself and others similarly situated, Perry O. Hooper, Sr., the Republican candidate for Chief Justice, and James D. Martin, the Republican candidate for Treasurer, entered a preliminary injunction against the Secretary and the election officials of Alabama's sixty-seven counties precluding them from complying with the circuit court's order.[9] The district court, in its memorandum order granting the preliminary injunction, found from the evidence the parties presented that "the past practice of the Alabama election officials prior to [the] general election has been to refrain from counting any absentee ballot that did not include notarization or the signatures of two qualified witnesses," that "the past practice of the Secretary of [the] State of Alabama has been to certify Alabama election results on the basis of vote counts that included absentee votes cast only by those voters who included affidavits with either notarization or the signatures of two qualified witnesses," and that the Montgomery County Circuit Court's order changed this past practice. The district court then concluded that, in obeying the circuit court's order, the defendant election officials were

---

[8]"Section 1983 is the federal statute under which a citizen may bring suit in a federal court, alleging that persons acting under color of state law have deprived him or her of rights secured by the Constitution of the United States." *Curry v. Baker,* 802 F.2d 1302, 1305 (11th Cir.), *cert. denied,* 479 U.S. 1023, 107 S.Ct. 1262, 93 L.Ed.2d 819 (1986). The plaintiffs also sought relief under 42 U.S.C. § 1974 (1988) and the Voting Rights Act, 42 U.S.C. § 1973 (1988). The plaintiffs' claims for relief under those statutes are not at issue in this appeal.

[9]John Davis is also involved in the case as a defendant, representing a group of absentee voters who seek to have their contested absentee ballots counted.

violating the Fourteenth Amendment.  The district court, therefore, ordered that the contested ballots and other election materials be preserved and protected;  that the Secretary refrain from certifying any election results based on a vote count that included the contested absentee ballots;  that Alabama's sixty-seven county election officials forward vote totals to the Secretary without counting the contested absentee ballots;  and that the Secretary, upon receipt of those vote totals from the county election officials, certify the election results.

The defendants appeal,[10] raising several issues.  They contend that:  (1) the district court lacked subject matter jurisdiction to entertain the plaintiffs' case;  (2) the plaintiffs failed to state a claim for relief under the United States Constitution;  and (3) assuming that the district court had subject matter jurisdiction and that the plaintiffs stated a constitutional claim, the district court should have abstained from exercising its jurisdiction.  We address each issue in turn.

                              I.

Appellants claim that the district court did not have subject matter jurisdiction under the *Rooker-Feldman* doctrine.  According to the *Rooker-Feldman* doctrine, "a United States District Court has

---

[10]If the district court's order is treated as a preliminary injunction, we have jurisdiction to review the order under 28 U.S.C. § 1292(a)(1) (1988).  If the order is treated as a permanent injunction, our jurisdiction lies under 28 U.S.C. § 1291 (1988).  Arguably, the district court's order is a permanent injunction.  The district court found the material facts, which are not in dispute, on the liability issues, and a further evidentiary hearing regarding those facts appears to be unnecessary;  the district court was presented with pure questions of law regarding the liability issues.

no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983). Appellants contend that the district court lacked subject matter jurisdiction to entertain the plaintiffs' claims because those claims, in effect, require the district court to review the final judgment of the Montgomery County Circuit Court. We reject this argument for two reasons. First, the plaintiffs in this case are not, by the admission of all parties, parties to the circuit court action. The *Rooker-Feldman* doctrine does not apply to such circumstances. *See Johnson v. De Grandy,* --- U.S. ----, ----, 114 S.Ct. 2647, 2654, 129 L.Ed.2d 775 (1994). Second, because the plaintiffs are not parties to the circuit court action, the plaintiffs had no opportunity to raise their constitutional claims in the circuit court and their claims, therefore, were not considered by the circuit court. *See Wood v. Orange County,* 715 F.2d 1543, 1547 (11th Cir.1983) ("[T]he *Rooker* bar can only apply to issues that the plaintiff had a reasonable opportunity to raise."), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984).[11]

## II.

Appellants contend that the plaintiffs failed to allege, or to demonstrate, the violation of a right "secured by the Constitution" as required under section 1983. *Baker v. McCollan,*

---

[11]In its December 9, 1994, memorandum order, *see supra* note 6, the Montgomery County Circuit Court identified the issues before it as: "(1) whether the Court had jurisdiction to entertain the proceeding and (2) whether the ballots in question were legally cast and due to be counted." *Odom v. Bennett.*

443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) (quoting 42 U.S.C. § 1983). We disagree. In this case, Roe, Hooper, and Martin allege that "[t]he actions of the Defendants and the Defendant Class ... would constitute a retroactive validation of a potentially controlling number of votes in the elections for Chief Justice and Treasurer" that "would result in fundamental unfairness and would violate plaintiffs' right to due process of law" in violation of the Fourteenth Amendment, and that this violation of "the plaintiffs' rights to vote and ... have their votes properly and honestly counted" constitutes a violation of the First and Fourteenth Amendments.

The right of suffrage is "a fundamental political right, because preservative of all rights." *Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886). "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims,* 377 U.S. 533, 554, 84 S.Ct. 1362, 1377, 12 L.Ed.2d 506 (1964). Not every state election dispute, however, implicates the Due Process Clause of the Fourteenth Amendment and thus leads to possible federal court intervention. Generally, federal courts do not involve themselves in " "garden variety' election disputes." *Curry,* 802 F.2d at 1315 (quoting *Welch v. McKenzie,* 765 F.2d 1311, 1317, *vacated on other grounds and remanded,* 777 F.2d 191 (5th Cir.1985)). If, however, "the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order. Such a

situation must go well beyond the ordinary dispute over the counting and marking of ballots."  *Id.* (quoting *Duncan v. Poythress,* 657 F.2d 691, 703 (5th Cir. Unit B 1981), *cert. denied,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982)).  We address, then, whether the plaintiffs have demonstrated fundamental unfairness in the November 8 election.  We conclude that they have.

The plaintiffs acknowledge that the State of Alabama is free to place reasonable time, place, and manner restrictions on voting, and that Alabama can require that voters be qualified electors. *See generally Burdick v. Takushi,* --- U.S. ----, ----, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992) ("Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections....").  They argue, however, that section 17-10-7 of the Alabama Election Code clearly requires that affidavits accompanying absentee ballots be either notarized or signed by two witnesses;  that the statewide practice in Alabama prior to the November 8 general election was to exclude absentee ballots that did not comply with this rule;  and that the circuit court's order requiring the state's election officials to perform the ministerial act of counting the contested absentee ballots,[12] if permitted to stand, will constitute a retroactive change in the election laws that will effectively "stuff the ballot box,"[13] implicating fundamental fairness issues.  *Cf. United States*

---

[12]The counting of ballots is a "ministerial act" under Alabama law.  *Cosby v. Moore,* 259 Ala. 41, 65 So.2d 178, 181 (1953).

[13]According to the record before the district court, in one Alabama county, Greene County, nearly 33% of the votes cast were from absentee voters.  Secretary Bennett testified that he has

*v. Saylor,* 322 U.S. 385, 389, 64 S.Ct. 1101, 1103, 88 L.Ed. 1341 (1944).

We agree that failing to exclude the contested absentee ballots will constitute a post-election departure from previous practice in Alabama. *See Griffin v. Burns,* 570 F.2d 1065, 1075 (1st Cir.1978). This departure would have two effects that implicate fundamental fairness and the propriety of the two elections at issue. First, counting ballots that were not previously counted would dilute the votes of those voters who met the requirements of section 17-10-7 as well as those voters who actually went to the polls on election day. Second, the change in the rules after the election would have the effect of disenfranchising those who would have voted but for the inconvenience imposed by the notarization/witness requirement. *See, e.g., Brown v. O'Brien,* 469 F.2d 563, 569 (D.C.Cir.), *vacated as moot,* 409 U.S. 816, 93 S.Ct. 67, 34 L.Ed.2d 72 (1972) ("If the party had adopted [the rule change] prior to the ... primary election, the candidates might have campaigned in a different manner.... Voters might have cast their ballots for a different candidate; and the State of California might have enacted an alternative delegate selection scheme...." (footnote omitted)).

Appellants point out that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to

---

"had concerns about absentee voter fraud for years" and that, if absentee ballots exceed 6% to 7% of the total votes cast, "bells and sirens ought to go off. There cannot be that many sick, infirm or out-of-county voters on one day." *Odom v. Bennett.*

that construction." *Rivers v. Roadway Express, Inc.,* --- U.S. ---- , ----, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994). Thus, appellants urge, the Montgomery County Circuit Court's ruling merely articulated in a clearer way what the law has always been in Alabama. This argument, however, ignores the fact that section 17-10-7, on its face, requires notarization or witnessing, that the Secretary and the Attorney General have acknowledged the requirement and that, as the district court found, the practice of the election officials throughout the state has been to exclude absentee ballots that did not meet this requirement. We consider it unreasonable to expect average voters and candidates to question the Secretary's, the Attorney General's, and the election officials' interpretation and application of the statute, especially in light of its plain language. *See Griffin,* 570 F.2d at 1076.

Appellants also argue that this case presents a case of enfranchisement of those who cast the contested absentee ballots, rather than a disenfranchisement of qualified voters, and thus does not rise to the level of a constitutional violation. They rely heavily on *Partido Nuevo Progresista v. Barreto Perez,* 639 F.2d 825 (1st Cir.1980), *cert. denied,* 451 U.S. 985, 101 S.Ct. 2318, 68 L.Ed.2d 842 (1981). In that case, the plaintiffs challenged the tallying of ballots in a local election in Puerto Rico. A section of the Electoral Law of Puerto Rico provided that, if a handwritten ballot was used in an election, the Electoral Commission had to guarantee that the elector was qualified to vote by making a mark

in a specific place on the ballot.[14]  The section stated that if the mark was not made in the correct space, the ballot would be null and void.  After the election, the Administrator of the Election Commission and the Commonwealth's Electoral Review Board held that several ballots were invalid because they were not marked correctly.  The Supreme Court of Puerto Rico reversed, holding that, despite the section's clear language, the ballots should be counted.  The *Barreto Perez* plaintiffs, citing *Griffin,* alleged that the Puerto Rico Supreme Court's ruling constituted a change in the method of counting ballots after the election and, therefore, violated the Constitution.  *Id.* at 826.

The First Circuit did not agree for two reasons.  First, the court found it significant that "this case does not involve a state court order that *dis*enfranchises voters;  rather it involves a ... decision that *en*franchises them—plaintiffs claim that votes were "diluted' by the votes of others, not that they themselves were prevented from voting."  *Id.* at 828 (emphasis in original).  Second, the court found that "no party or person is likely to have acted to their detriment by relying upon the invalidity of [the contested] ballots...."  *Id.*  Accordingly, the First Circuit found no constitutional injury.  We need not address the court's apparent holding that dilution is not a constitutional injury because the facts of this case differ markedly from those of *Barreto Perez.*  We believe that, had the candidates and citizens of Alabama known that something less than the signature of two witnesses or a notary

_____

[14]It is not clear whether the Electoral Commission itself, or a representative of the Commission at the polling place, was required to mark the ballots.

attesting to the signature of absentee voters would suffice, campaign strategies would have taken this into account and supporters of Hooper and Martin who did not vote would have voted absentee.[15]

### III.

The appellants contend that, since this case involves "a sensitive area of state policy," the district court should have stayed its hand and required the plaintiffs to invoke their state remedies—either an election contest in the legislature or a judicial declaration from the Supreme Court of Alabama. *See Railroad Comm'n v. Pullman,* 312 U.S. 496, 501-02, 61 S.Ct. 643, 645-46, 85 L.Ed. 971 (1941).[16] We agree that federal courts should refrain from holding a state election law unconstitutional when a reasonable alternative course of action exists. *See Burdick v. Takushi,* 846 F.2d 587, 589 (9th Cir.1988). We are, therefore, reluctant to reach a final decision in this case while the proper application of the Alabama Election Code remains muddled.

There are two ways to show deference to the state decisionmakers in this matter: we can leave the plaintiffs to their state remedies; or we can certify a question to the Supreme Court of Alabama, retain jurisdiction, and await that court's

---

[15]We take judicial notice of the fact that reducing the inconvenience of voting absentee—by eliminating the necessity of obtaining the signature of a notary or two witnesses—would increase the number of absentee ballots.

[16]The defendants contend that the plaintiffs could obtain a judicial declaration from the Supreme Court of Alabama by seeking and obtaining intervention in *Odom v. Bennett,* the Montgomery County Circuit Court case, and then, if they do not prevail, appealing.

answer.  We choose the latter form of abstention;  leaving the plaintiffs to their state remedies is neither workable nor appropriate in this case.

Because Alabama has barred its courts from entertaining statewide election contests, *see* Ala.Code § 17-15-6 (quoted *supra* note 4), there is only one state remedy in this case:  a contest in the legislature.  The legislature, however, is not an adequate or proper forum for the resolution of the federal constitutional issues presented.  Moreover, even if the plaintiffs were to intervene successfully in the Montgomery County Circuit Court proceeding, *Odom v. Bennett,* and the Alabama appellate courts[17] were to find—despite the clear jurisdictional bar—that the circuit court had the power to hear the plaintiffs' constitutional claims, the urgency of this matter counsels against such a course of action. The unnecessary delay that would result were we to leave the plaintiffs to their state court remedy would be particularly insidious:  it would extend the time that the two offices at issue remain in limbo, hindering those offices in the handling of state affairs.  Time is, therefore, of the essence.      *Cf.  Harman v. Forssenius,* 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50 (1965) (holding that a district court did not abuse its discretion in refusing to abstain "[g]iven the importance and immediacy of the problem[ ] and the delay inherent in referring questions of state law to state tribunals");  *Badham v. United States Dist. Court,* 721 F.2d 1170, 1173 (9th Cir.1983) ("Although we are mindful of the important principles of federalism implicit in the doctrine of

---

[17]The Alabama Court of Appeals and the Supreme Court.

abstention, these principles may be outweighed in an individual case by the countervailing interest in ensuring each citizen's federal right to vote.").

By certifying the question to the Supreme Court of Alabama, we can accommodate Alabama's interest in having its high court settle the question whether a notarization or the signatures of two witnesses is required before an absentee ballot may be counted. Certification will achieve the proper balance between the interest of federalism and timely resolution of this matter. We therefore issue the following certification:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF ALABAMA PURSUANT TO RULE 18 OF THE ALABAMA RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF ALABAMA AND ITS HONORABLE JUSTICES:

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves a question of Alabama state law that is determinative of the cause, but unanswered by controlling precedent of the Supreme Court of Alabama or any Alabama Court of Appeals. We therefore certify this question for resolution by the highest court of Alabama:

> WHETHER ABSENTEE BALLOTS THAT, ON THE ACCOMPANYING AFFIDAVIT ENVELOPE, FAIL TO HAVE TWO WITNESSES AND LACK PROPER NOTARIZATION (FOR EXAMPLE, BALLOT ENVELOPES THAT HAVE ONLY A SIGNATURE OR ONLY ONE WITNESS, OR ON WHICH THE VOTER AND THE NOTARY HAVE SIGNED THE BALLOT BUT THE NOTARY FAILS TO FILL IN THE "TITLE OF OFFICIAL") MEET THE REQUIREMENTS OF ALABAMA LAW, SPECIFICALLY ALABAMA CODE SECTION 17-10-7, TO BE LEGAL BALLOTS DUE TO BE COUNTED IN THE NOVEMBER 8, 1994 GENERAL ELECTION.

While we await the Supreme Court's answer, to preserve the status quo with respect to the two elections at issue and, at the same time, allow the processing of the uncontested elections to

proceed, we modify and clarify the district court's injunction as follows: (1) We affirm the portion of the district court's injunction requiring the defendants to preserve all election materials. We clarify this portion of the injunction by stressing that contested absentee ballots are not to be opened, altered, or tampered with in any manner. (2) We affirm the portion of the district court's injunction enjoining the Secretary of the State of Alabama from certifying any election results in the general election of November 8, 1994 that have not been purged of known or identifiable contested absentee ballots. Once the election results have been purged of any contested absentee ballots, the Secretary may certify the results of elections for offices that are not contested in this case, to wit: all the elections except those for Chief Justice and Treasurer. (3) With respect to those two offices, we vacate the provisions of the district court's injunction requiring that county election officials forward purged election results to the Secretary and requiring the Secretary to certify the elections based on those forwarded results. We order the Secretary not to certify the elections for the offices of Chief Justice and Treasurer.

QUESTION CERTIFIED; INJUNCTION AFFIRMED AS MODIFIED AND CLARIFIED pending further order of this court.


EDMONDSON, Circuit Judge, dissenting:

I know of no other case involving disputed ballots in which a federal court has intervened in a state election where the plaintiff failed to show, in fact, either:

1. that plaintiff had "lost" the election but would have won the election if lawful votes only had been counted (that is, the alleged constitutional error changed the election result); or

2. that it was impossible ever to know that his opponent (the apparent winner) had truly won the election because of the nature of the voting irregularities (that is, the alleged constitutional error placed in everlasting doubt what was the true result of the election).

Nothing is known in this case about whether the alleged illegalities have affected or will affect the outcome of the pertinent elections. Yet today we plow into Alabama's election process and uphold a preliminary injunction that, in effect, overrules a pre-existing state court order which had directed that the contested votes be counted. And, instead, the federal courts (basically, stopping short the state election processes) order that the contested votes be *not* counted at all. This high level of federal activity seems unnecessary and, therefore, improper. So, I conclude that the district court abused its discretion.

For all we or anyone else knows, if the contested absentee votes in this case were counted, plaintiffs' candidates would win the elections, even taking those contested votes into account. In such event, none of the plaintiffs would be aggrieved by the decision to count absentee ballots not strictly complying with the state's statute. I believe everyone involved in this election dispute would understand that a court's allowing the simple adding up of which of the contested absentee votes went to which candidate would *not* be the same thing as saying that the contested votes will have value ultimately, as a matter of law, for deciding the final, official outcome of the elections. But instead of letting the votes be counted as an Alabama court has directed and then seeing

*if* there is even a controversy about the election's outcome, the federal courts have jumped into the process and blocked the very step that might show there is no big problem to be dealt with by federal judges.[1]  I would not interfere with the counting of the contested ballots, although I agree that all the ballots and envelopes and other election materials pertinent to the contested ballots should be maintained and protected so that additional judicial review, *if* needed, would be convenient and possible.

This difference with my colleagues is more than just academic bickering about technicalities.  Federal courts are not the bosses in state election disputes unless extraordinary circumstances affecting the integrity of the state's election process are clearly present in a high degree.  This well-settled principle—that federal courts interfere in state elections as a last resort—is basic to federalism, and we should take it to heart.

> Principles of federalism limit the power of federal courts to intervene in state elections, however.  The Constitution leaves "the conduct of state elections to the states." *Gamza v. Aguirre,* 619 F.2d 449, 453 (5th Cir.1980).  We have cautioned before against excessive entanglement of federal courts in state elections.  "The very nature of the federal union contemplates separate functions for the states.  If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute...." *Id.  Burton v. State of Georgia,* 953 F.2d 1266, 1268 (11th Cir.1992).

As I understand the law, "[o]nly in extraordinary circumstances will a challenge to a state election rise to the

---

[1]A showing that the state irregularity affects the outcome of the election has jurisprudential importance either because the controversy is not fully ripe for adjudication of the merits until the outcome is shown to be, in fact, in doubt or because in a case like this, a plaintiff just cannot show a violation of substantive due process if he cannot show that what the state did or did not do made a real difference in the election.

level of a constitutional deprivation." *Curry v. Baker,* 802 F.2d 1302, 1314 (11th Cir.1986). To my way of thinking, the federal courts have acted too aggressively too soon and have, as a result, become entangled in Alabama's state election too much. At a time when we do not know whether the contested votes, in fact, will make any difference at all in the outcome of the elections, it is hard for me to say that I am now facing the kind of extraordinary circumstances—patent and fundamental unfairness *tied to concrete harm*—that will amount to a constitutional deprivation and that will justify immediate significant federal interference in the election processes of a state.

I would dissolve the district court's injunction except to the extent that the injunction requires all election materials in the defendants' control to be preserved and protected in a way (for example, keeping questionable individual absentee ballots and their envelopes together) that a fair review of the election remains, in fact, possible and convenient.[2] This limited relief should be

---

[2]I also would certify no question now from this court to the Supreme Court of Alabama, although I agree that we need to know what the Alabama law is before we decide whether the Alabama law violates the Federal Constitution. *This case is before us on an appeal of a preliminary injunction.* (The parties in district court were not notified that the preliminary injunction hearing would also be *the* trial on the merits; the preliminary proceedings were rushed; it is not plain that the district court has heard all the evidence on such significant points as what was the custom for receiving and counting absentee ballots in the past.) By its nature, a preliminary injunction decides nothing finally. And, as a result, an appellate court reviewing the grant of the injunction is also not rendering its final judgment on the merits of the underlying case. The State of Alabama has been good enough to create a procedure by which federal courts can ask for guidance on matters of Alabama law. But Alabama's rule provides that the questions which federal courts ask Alabama's Supreme Court to answer must be questions "which are determinative of said cause," by which I understand us to be

enough to protect plaintiffs until the Alabama law becomes clear, assuming that there is a live controversy about this election after the contested ballots are counted.[3]

Some of the ideas expressed in today's court opinion are, to me, doubtful:  such as the theory that Alabama's legislature has the power in election contests to act contrary to the law of Alabama as declared by Alabama's highest court;  the conclusion

---

advised to send no questions that would not lead directly to the final resolution of the cause of action in federal court.  Given the procedural posture of this case, I worry that certification from this court is probably an unauthorized imposition on the Alabama Supreme Court.  If I were not dissenting otherwise, I would raise no question about the time and manner of certification.  But I worry about the precedent we are setting. I do not want to abuse the certification process and, perhaps, wear out our welcome when we ask for help from state supreme courts.

The merits of this case remain to be decided finally in the district court.  That court can (and I think should) certify the state law question speedily to the Alabama Supreme Court.  Coming from the district court, I think it can be more accurately said that the certified question can be "determinative of said cause."

[3]This kind of injunction is far more narrow and far less intrusive on the state's affairs than the one granted by the district court or the modified injunction issued by this court. Depending on what the law of Alabama is (once it is definitively set out by Alabama's high court, by certification from the district court or otherwise), plaintiffs' likelihood of success on federal constitutional grounds could become pretty good.  So, today I can say plaintiffs have a fair chance of success. Jumbling, in the meantime, of the contested absentee ballots with other ballots in such a way that evidence would be lost and that would obstruct further review would doubtlessly result in irreparable harm and would be contrary to the public interest in honest elections.  (This concern to ensure against the risk of vanished evidence also explains why this case is ripe for some adjudication now even when the state election process has not been concluded.)  Given the serious nature of the harm and the importance of the public interest, some injunctive relief seems justified.  I am confident that the parties and the district court could work out the details of how best to preserve the evidence and still not burden defendants too much.

that an election contest before the legislative commission is inadequate to determine the legal issues raised by plaintiffs; the thought that only absolute identity of parties in the state court action and federal court action (without regard to state-case parties possibly under the control of or in privity with federal-case parties) will trigger a *Rooker-Feldman* bar in federal court; and the perception that a federal court order that countermands a pre-existing Alabama court order maintains the status quo in Alabama.

Much of my objection to what this court says today, however, is not that I am sure that what it has said is wrong, but that, given the facts actually before us at this time, I am pretty sure it is unnecessary to decide or to speak about many of these sensitive issues. I see no need for a lot of immediate federal court action yet. I would wait a bit longer and let Alabama's election process finish (or come closer to finishing) before the federal courts cut in. I do know that bad facts can result in bad law,[4] and here the facts had they been allowed to develop fully might have been such that no law (good or bad) would have to be made.

---

[4]Considering how much honest elections matter and considering the nature of the statewide offices in question, this case may also be seen as one in which the outcome is of unusual importance and immediate interest. "Great cases like hard cases make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend." *Northern Securities Co. v. U.S.,* 193 U.S. 197, 400-401, 24 S.Ct. 436, 486-87, 48 L.Ed. 679 (1904) (Holmes, J., dissenting).