**PARTIDO NUEVO PROGRESISTA et al., Plaintiffs, Appellees,**

v.

**Gerineldo BARRETO PEREZ, Administrator, Puerto Rico Elections Commission, Defendant, Appellee,**

**Partido Popular Democratico, Intervenor, Appellant.**

**Misc. No. 80–8094.**

United States Court of Appeals, First Circuit.

Argued Dec. 31, 1980.

Decided Dec. 31, 1980.

---

**3.** In the two contempt proceedings appellant has also been represented by the same counsel.

Lino J. Saldana, San Juan, P.R., with whom Rafael Escalera Rodriguez, Rio Piedras, P.R., was on brief for appellant.

Hector M. Laffite, San Juan, P.R., for Partido Nuevo Progresista, appellee.

Miguel A. Pagan, San Juan, P.R., for Gerineldo Barreto Perez, Administrator, etc., appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

PER CURIAM.

Hearing has been held upon the motion of intervenor-appellant, Partido Popular Democratico, for a stay of, and expedited appeal from, the district court's order in litigation involving a constitutional challenge to the tallying of ballots cast for local offices in the Puerto Rico general election of November 4, 1980.

The plaintiff-appellee[1] is the Partido Nuevo Progresista (PNP) which alleges that counting the ballots will tip the balance against its candidates in one or more closely contested races. The PNP maintains that the ballots were improperly marked and therefore invalid under the literal terms of Article 1.033(b) of the Electoral Law of Puerto Rico, 16 L.P.R.A. § 3033(b), which provides in relevant part:

"If the handwritten ballot is used, [the Electoral Commission] must guarantee that the elector may vote by making any affirmative mark in the space under the printed insignia or device of the party, or within the square in which a candidate's name appears. *Any mark placed outside of said space or square shall be null and void, and deemed unmarked.*" (Emphasis added.)

In the present case, the disputed ballots contained marks outside the designated spaces and squares. Most such marks were evidently placed directly above the list of candidates of the Partido Popular Democratico, the only major party with space above its ballot heading for such mismarks.

The Administrator of the Election Commission ruled the ballots invalid, a decision upheld on appeal by the Commonwealth's Electoral Review Board. The Supreme Court of Puerto Rico reversed. *Popular Democratic Party v. State Elections Commission*, No. 0–80–646, 108 D.P.R. (Dec. 2, 1980). That court construed 16 L.P.R.A. § 3033(b), despite its literal prohibition of the tallying of mismarked ballots, to permit such tallying where the intent of the voter was clear.

Such a construction of local law by the highest court of the Commonwealth might seem to have ended the matter. The PNP, however, subsequently brought this action pursuant to 42 U.S.C. § 1983, claiming constitutional violations in several particulars:[2]

---

1. Plaintiffs in the district court included individual voters who were officials of or who favored the PNP and who claimed that their right to vote would be diluted by counting the disputed ballots. The district court dismissed as to these plaintiffs for lack of a justiciable controversy, citing, *e. g., Schlesinger v. Reservists Committee*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). An appeal from this aspect of the court's order, if any has been noticed, is not presently before this court.

2. As an intervenor in the Puerto Rico Supreme Court case, the PNP is arguably barred by the doctrine of *res judicata* from litigating the constitutional claim. *See Lovely v. Laliberte*, 498

"Insofar as the ballots at issue have a blank space above the columns of two parties, Partido Popular Democratico (PPD) and Partido Socialista Puertorriqueno (PSP), as described in Exhibits 'A' and 'B' hereto, and insofar as said ballots provide no such blank space above the columns of the remaining two parties (as well as above the write-in column), but rather have space fully occupied by printed matter, then the validation of any marks placed on such blank spaces would *de facto* grant a privilege to the parties under said blank spaces, thereby depriving plaintiffs of their Fifth and Fourteenth Amendments right to enjoy the equal protection of the laws.

. . . . .

"The ballots have been cast and the election is over. Prior thereto, both the statute, 16 L.P.R.A. 3033(b), and the Manual of Procedure for the Election, widely published, contained an express representation and warranty to plaintiffs and to the electorate in general, that the ballots at issue (Exhibits A and B hereto) would be rendered null and void. Defendant cannot change such rule of law retroactively, and, if he does, it would violate plaintiffs' right not to be deprived of their liberty and First Amendment rights without procedural and substantive due process of law."

The district court, relying on this court's opinion in *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978), held for the PNP, saying,

"In our opinion the lesson to be learned from *Griffin* is, that changing the rules of the game after it has been played and the score is known, violates fundamental rules of fair play. Such action gives the appearance of, as well as is, actual unfairness and consequently violates due process of law. The counting of ballots after an election which, under the rules prevalent at the time of the vote-casting were considered void and invalid, is the practical and functional equivalent of alteration of ballots or of stuffing the ballot-box, because as in those cases, it amounts to the counting of legally inexistent votes. Cf. *United States v. Classic*, 313 U.S. 299, 315 [61 S.Ct. 1031, 85 L.Ed.2d 1368] (1941). It thus brings about the dilution and debasement of the validly cast votes.

"Given the circumstances of this case, we are of the opinion that substantial Federal constitutional rights of Plaintiff NPP have been affected, which considering the lack of an adequate remedy at law and the irreparable nature of the injury to be suffered, entitle this party to equitable relief before this Court. Common sense and justice dictate this outcome."

The court thereupon enjoined defendants from counting ballots not marked in accordance with the literal terms of 16 L.P.R.A. § 3033(b).

We hold that the district court erred in its conclusion that *Griffin v. Burns* permitted federal court intervention in this case. In *Griffin* we held that the election process had reached "the point of patent and fundamental unfairness," and ordered a new election. Voters there had been told for many years that they could vote in a primary by absentee ballot, and such ballots had been furnished them by election officials in the challenged election. After the election they were told that their absentee ballots were

F.2d 1261, 1263 (1st Cir.), *cert. denied*, 419 U.S. 1308, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). The PNP maintains that it expressly reserved the constitutional issue when it intervened and may, under the doctrine of *England v. Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), raise the issue in federal district court. Although this question has not been decided by this court, *see Landrigan v. City of Warwick*, 628 F.2d 736, 740 n.2 (1st Cir. 1980); *Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103, 1108 n.8 (1st Cir. 1978); *Lovely v. Laliberte*, 498 F.2d 1261, 1263–64 (1st Cir. 1974), under a recent decision of the United States Supreme Court, *see Allen v. McCurry*, —— U.S. ——, ——, 101 S.Ct. 411, 418 n.17, 66 L.Ed.2d 308 (1980), it may be that *England* does not apply to a suit initially brought in a state court and that ordinary principles of *res judicata* therefore are applicable. Without expressly deciding this issue, we have determined to proceed to the merits as we find it clear that, in any case, appellees PNP cannot prevail.

void. Unlike *Griffin*, this case does not involve a state court order that *dis*enfranchises voters; rather it involves a Commonwealth decision that *en*franchises them— plaintiffs claim that votes were "diluted" by the votes of others, not that they themselves were prevented from voting. Moreover, in *Griffin*, had those casting absentee ballots known of their possible invalidity, many might have gone to the polls and voted in person. Here there was no such reliance upon an official interpretation of the local election law; no party or person is likely to have acted to their detriment by relying upon the invalidity of ballots with marks outside the ballots' drawn rectangles. For these reasons, we believe this case falls not within the purview of *Griffin* but within the area delineated by the Second Circuit, in *Powell v. Power*, 436 F.2d 84 (1970), as inappropriate for federal court review in a civil rights action, lest the federal court "be thrust into the details of virtually every election . . . ." *Id.*, at 86.

*The order of the district court is reversed. Mandate to issue forthwith.*