**Mark J. BENNETT; Charles S. Frumin; Bobby Carinio; Mark R. Spengler; Let the People Decide; Citizens for a Constitutional Convention, on behalf of themselves and others similarly situated, and Jerry Beck, Plaintiffs–Appellees,**

v.

**Dwayne D. YOSHINA, Chief, Elections Officer of the State of Hawaii; Office of Elections; Mazie K. Hirono, Lieutenant Governor of the State of Hawaii, and; Benjamin J. Cayetano, Governor of the State of Hawaii, in their official capacities, Defendants–Appellants.**

---

Mark J. BENNETT; Charles S. Frumin; Bobby Carinio; Mark R. Spengler; Let the People Decide; Citizens for a Constitutional Convention, on behalf of themselves and others similarly situated, and Jerry Beck, Plaintiffs–Appellants,

v.

Dwayne D. YOSHINA, Chief, Elections Officer of the State of Hawaii; Office of Elections; Mazie K. Hirono, Lieutenant Governor of the State of Hawaii, and; Benjamin J. Cayetano, Governor of the State of Hawaii, Defendants–Appellees,

and

Hawaii State AFL–CIO; Gary W. Rodrigues; Russell Okata; Keith Ahue; Jackie Ferguson–Miyamoto; Donald Abdul; Nilda Chock; Clayton Dela Cruz; Guy Fujimura; Carmela Gomez; Leonard Hoshijo; Jonathan Kane; Mark Matsumoto; Stuart McKinley; Richard Rutt; Lawrence Sakamoto; Howard Tasaka; Peter Trask; Adaline Uhrle; George Yasumoto; Michael Amii; Dennis Chang; Patricia A. Chow; Garen R. Deweese; Leslie Anne Deweese; Jan Doi; Robert Doi; Melvin Fong; Kimberly Haines; William Hoshijo; Marsha R. Joyner; Calvin Koseki; Leimalama Lee Loi; Robert Matsunaka; Laverne Moore; Janette M. Nagao; Robert H. Nagao; Craig Nahm; Ayako Nakanishi; Douglass Pang; Larry Sakoda; Ethel Shintaku; Andrei Soto; George Thomas; Leilani Thomas; Linda N. Thomas; Jeanine Tsuchiya; Maureen Wakuzawa; Harry Wood; Lana Young, Defendant–Intervenors–Appellees.

Mark J. BENNETT; Charles S. Frumin; Bobby Carinio; Mark R. Spengler; Let the People Decide; Citizens for a Constitutional Convention, on behalf of themselves and others similarly situated, and Jerry Beck, Plaintiffs–Appellees,

v.

Dwayne D. YOSHINA, Chief, Elections Officer of the State of Hawaii; Office of Elections; Mazie K. Hirono, Lieutenant Governor of the State of Hawaii, in their individual capacities; Office of Elections; Benjamin J. Cayetano, Governor of the State of Hawaii, Defendants,

and

Hawaii State AFL–CIO; Gary W. Rodrigues; Russell Okata; Keith Ahue; Jackie Ferguson–Miyamoto; Donald Abdul; Nilda Chock; Clayton Dela Cruz; Guy Fujimura; Carmela Gomez; Leonard Hoshijo; Jonathan Kane; Mark Matsumoto; Stuart McKinley; Richard Rutt; Lawrence Sakamoto; Howard Tasaka; Peter Trask; Adaline Uhrle; George Yasumoto; Michael Amii; Dennis Chang; Patricia A. Chow; Garen R. Deweese; Leslie Anne Deweese; Jan Doi; Robert Doi; Melvin Fong; Kimberly Haines; William Hoshijo; Marsha R. Joyner; Calvin Koseki; Leimalama Lee Loi; Robert Matsunaka; Laverne Moore; Janette M. Nagao; Robert H. Nagao; Craig Nahm; Ayako Nakanishi; Douglass Pang; Larry Sakoda; Ethel Shintaku; Andrei Soto; George Thomas; Leilani Thomas; Linda N. Thomas; Jeanine Tsuchiya; Maureen Wakuzawa; Harry Wood; Lana Young, Defendant–Intervenors–Appellants.

**1220**

Mark J. BENNETT; Charles S. Frumin; Bobby Carinio; Mark R. Spengler; Let the People Decide; Citizens for a Constitutional Convention, on behalf of themselves and others similarly situated, and Jerry Beck, Plaintiffs–Appellees,

v.

Dwayne D. YOSHINA, Chief, Elections Officer of the State of Hawaii; Office of Elections; Mazie K. Hirono, Lieutenant Governor of the State of Hawaii, and; Benjamin J. Cayetano, Governor of the State of Hawaii, in their official capacities; Office of Elections, Defendants,

and

Hawaii State AFL–CIO; Gary W. Rodrigues; Russell Okata; Keith Ahue; Jackie Ferguson–Miyamoto; Donald Abdul; Nilda Chock; Clayton Dela Cruz; Guy Fujimura; Carmela Gomez; Leonard Hoshijo; Jonathan Kane; Mark Matsumoto; Stuart McKinley; Richard Rutt; Lawrence Sakamoto; Howard Tasaka; Peter Trask; Adaline Uhrle; George Yasumoto; Michael Amii; Dennis Chang; Patricia A. Chow; Garen R. Deweese; No. 97–16596 D.C. No. CV 97–0322 Dae Leslie Anne Deweese; Jan Doi; Robert Doi; Melvin Fong; Kimberly Haines; William Hoshijo; Marsha R. Joyner; Calvin Koseki; Leimalama Lee Loi; Robert Matsunaka; Laverne Moore; Janette M. Nagao; Robert H. Nagao; Craig Nahm; Ayako Nakanishi; Douglass Pang; Larry Sakoda; Ethel Shintaku; Andrei Soto; George Thomas; Leilani Thomas; Linda N. Thomas; Jeanine Tsuchiya; Maureen Wakuzawa; Harry Wood; Lana Young, Defendant–Intervenors– Appellants.

Nos. 97–16408, 97–16540, 97–16543 and 97–16596.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 16, 1998.

Decided March 27, 1998.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc June 23, 1998.*

---

* Judge Tashima has voted to reject the suggestion for rehearing en banc, and Judges Wiggins and Noonan so recommend.

Steven S. Michaels, Debevoise & Plimpton, New York City, and Mark J. Bennett, McCorriston Miho Miller Mukai, Honolulu, HI, for plaintiffs-appellees and appellants.

Margery S. Bronster, Attorney General of Hawaii, Dorothy Sellers, Deputy Attorney General, Honolulu, HI, for defendants-appellants and appellees.

Marsha S. Berzon and Lowell Finley, Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, California, for the defendant-intervenors-appellants in Nos. 97–16540 and 97–16596, and for amici curiae Hawaii State AFL–CIO, et al., in Nos. 97–16408 and 97–16543.

Shelton G.W. Jim On, Jim On & Beerman, Honolulu, Hawaii, for amicus curiae Republican Party of Hawaii.

Before: WIGGINS, NOONAN, and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

This case presents a constitutional challenge to a vote put to the citizens of Hawaii on November 5, 1996. Plaintiffs ask us to invalidate the vote on the ground that the

Hawaii Supreme Court's interpretation of blank ballots was so unforeseeable that the voters' substantive due process and free speech rights were violated. We reject this constitutional challenge and uphold the Hawaii vote.

## I.

The vote at issue was on a question asking Hawaii voters whether they wished to hold a convention that would propose amendments to the Hawaii state constitution. The constitutional convention question was one of several unrelated items on the general ballot, including ratification votes on three proposed state constitutional amendments.

By way of background, amendments to the Hawaii constitution can be proposed either by the legislature or by a convention. Haw. Const. art. XVII, § 1. The Hawaii Constitution states:

> The legislature may submit to the electorate at any general or special election the question, "Shall there be a convention to propose a revision of or amendments to the constitution?" If any nine-year period shall elapse during which the question shall not have been submitted, the lieutenant governor shall certify the question, to be voted on at the first general election following the expiration of such period.

Haw. Const. art. XVII, § 2. Amendments proposed by the convention must then be ratified by the people. *Id.* Pursuant to Haw. Const. art. XVII, § 2, voters were asked in 1966, 1976, 1986 and 1996 whether they wished to hold a constitutional convention.

Prior to 1996, machine-counted ballots that left the convention question blank were simply ignored in computing whether the convention question had passed. "Yes" votes were counted against "no" votes, and the majority ruled.

In preparation for the 1996 vote, the Office of Elections distributed an "information sheet" that was present at every polling place. The sheet explained the significance of a "yes" vote and a "no" vote, but was silent on what happened to blank ballots. Additionally, a few days before the election, the Office of Elections printed a "fact sheet"

that said that a majority on the convention question would be determined without considering blank ballots. This fact sheet was available at the Office of Elections to be picked up, and some voters did so. The fact sheet was also available on the internet, although only a small number of "hits" occurred at this internet site.

At some point before the 1996 vote—it is unclear exactly when—the Office of Elections told Citizens for a Constitutional Convention ("Citizens") that blank ballots would not be counted on the convention question. Citizens is an organization that lobbied Hawaii voters in favor of the convention question, and it claims to have changed its campaign strategy in reliance on the Office of Elections' instruction.

At the November 5 election, the electorate voted (or failed to vote) on the constitutional convention question, as follows: 163,869 voters marked "yes"; 160,153 marked "no"; 45,245 left the question blank; and 90 marked both "yes" and "no." Thus, if blank ballots are counted, they control the outcome of the vote.

Shortly after the election, the Hawaii State AFL–CIO[1] sued Dwayne D. Yoshina, the Chief Elections Officer of Hawaii,[2] in an original action in the Hawaii Supreme Court. The AFL–CIO sought a declaratory judgment that the constitutional convention question had failed and an order directing Yoshina to certify that it had failed. The Hawaii Supreme Court ruled in favor of the AFL–CIO. *Hawai'i State AFL–CIO v. Yoshina,* 84 Hawai'i 374, 935 P.2d 89, 98 (1997) (*"Yoshina I"*).

The court noted that Haw. Const. art. XVII, § 2, required a constitutional convention only if the question received a majority of the *"ballots cast* upon such a question." (Emphasis added.) Once a convention is convened, however, and amendments are proposed to the voters, the amendments pass if they receive "a majority of the *votes tallied* upon the question." Haw. Const. art. XVII, § 2 (emphasis added). The court noted the

---

**1.** The Hawaii State AFL–CIO was joined by 51 individually named plaintiffs in the state suit, but for convenience we refer only to the AFL–CIO.

**2.** As in this case, several other defendants were also named. For convenience, we refer to them collectively as "Yoshina."

difference in language and pointed to a committee report from the 1950 constitutional convention that indicated that the difference in language had been intentional. *Yoshina I,* 935 P.2d at 95. Therefore, the court concluded that "ballots cast" included all submitted ballots that contained the question, while "votes tallied" meant only the "yes" or "no" votes (*i.e.,* blank ballots operated *against* the convention question). *Id.* at 96. Because in the 1996 convention vote, the "yes" votes did not constitute a majority of the total "ballots cast" (as the Hawaii Supreme Court understood that term), the court ordered Yoshina to certify that the question had failed. *Id.* at 98.

Three weeks after the Hawaii Supreme Court's ruling, Mark J. Bennett, Citizens for a Constitutional Convention, Let the People Decide, and several individual plaintiffs commenced this action. Some of the individuals alleged that they had abstained on the convention question, but that if they had known that not voting had the same effect as voting "no," they would have voted differently. The other individuals voted "yes," and the institutional plaintiffs alleged that their members mostly voted "yes" on the convention question. Plaintiffs (collectively, "Bennett") argued that the Hawaii Supreme Court's decision in *Yoshina I* was an unforeseeable departure from past election practices and was unconstitutional, primarily for lack of notice.

The Hawaii State AFL–CIO and 49 individually named plaintiffs (collectively "applicants" or "AFL–CIO") filed a motion to intervene in the case. The applicants—all parties to *Yoshina I*—claimed to have an ideological interest in the outcome of the case, as well as an interest in protecting their victory in state court. The motion to intervene was denied.

On cross-motions for summary judgment, the district court ruled for plaintiffs. It found that plaintiffs had standing, and granted their motion for class certification, rulings that are not contested on appeal. The court concluded that federal jurisdiction existed in this case, rejecting the *Rooker/Feldman* doctrine (*see District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68

L.Ed. 362 (1923)) and the Eleventh Amendment as jurisdictional bars. Finally, the district court concluded that the constitutional convention vote had been fundamentally unfair because the Hawaii Supreme Court's opinion marked a departure from prior election practices, was unforeseeable to the average voter because it contradicted the previously understood election procedures, and contradicted information that the state itself had disseminated before the election. The court then ordered that a new election take place.

Everyone appeals. In No. 97–16408, Yoshina appeals the ruling that the Eleventh Amendment does not bar this suit, the conclusion that the convention vote was fundamentally unfair, and the order to conduct a new election. In No. 97–16543, Bennett cross-appeals the district court's decision to order a new election, instead of requiring Hawaii to certify that the constitutional convention question passed. In Nos. 97–16540 and 97–16596, the AFL–CIO appeals the denial of its motion to intervene.

## II.

■ Before we can reach the merits, we must overcome two jurisdictional hurdles. The first is the *Rooker/Feldman* doctrine, which holds that "a losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 2653–55, 129 L.Ed.2d 775 (1994). The rationale behind this doctrine is that the only federal court with the power to hear appeals from state courts is the United States Supreme Court. *Dubinka v. Judges of Super.Ct.,* 23 F.3d 218, 221 (9th Cir.1994).

■ We agree with the district court that the doctrine is not implicated in this case because it applies only when the federal plaintiff was a party to the state suit. *Johnson,* 512 U.S. at 1006, 114 S.Ct. at 2654–55. Here, the federal plaintiffs were not parties to the state suit. That case was between the AFL–CIO and Yoshina. Yoshina lost, and

the referendum was decreed to have failed. Then a coalition of entirely new people sued Yoshina in federal court, and Yoshina is now in the position of having to defend his defeat in state court. However, since the new plaintiffs were not parties to the state suit, their suit is not barred by the *Rooker/Feldman* doctrine.

■ The only twist is that two of the federal plaintiffs, Citizens for a Constitutional Convention and Let the People Decide, participated in the state case as amici curiae. Amici, however, are not actually parties to a case, cannot conduct discovery, and do not have the right to appeal an adverse decision. Since the *Rooker/Feldman* doctrine applies only when the federal plaintiff was a party to the state case and is challenging an adverse decision by the state court, *Johnson,* 512 U.S. at 1005–06, 114 S.Ct. at 2653–55, it follows that mere participation in the state case as amici does not invoke the *Rooker /Feldman* bar. *Exxon Corp. v. Bd. of Ed. of Lamar County,* 849 F.Supp. 479, 487 (S.D.Miss.1994), *aff'd, sub nom., Buckley v. Natchez–Adams School,* 68 F.3d 472 (5th Cir. 1995) (per curiam). Accordingly, we conclude that the *Rooker/Feldman* doctrine does not apply.

■ We are likewise unpersuaded by Yoshina's argument that we lack jurisdiction because of the Eleventh Amendment. The Amendment is understood to bar suits by a person against a state on questions of federal law. *Seminole Tribe v. Florida,* 517 U.S. 44, 53–54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996). However, an exception exists for a suit that seeks prospective relief from a state's ongoing constitutional violation, provided it names a state official as the defendant. *Edelman v. Jordan,* 415 U.S. 651, 664–66, 94 S.Ct. 1347, 1356–57, 39 L.Ed.2d 662 (1974); *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908).

■ Yoshina argues that no ongoing constitutional violation exists, reasoning that the November 5, 1996, election has already taken place and whatever problems may have occurred are unlikely to be repeated. In effect, Yoshina argues that completed state election mishaps can never be reviewed in federal court because once the election has occurred, any relief would be retrospective. The flaw in this argument is Yoshina's unduly narrow conception of the alleged constitutional injury. If, after ruling that blank ballots counted against the convention question, the Hawaii Supreme Court had also decided that it was unfair to surprise voters with this new rule and ordered a new election, we do not suppose that Bennett would have troubled himself with a federal lawsuit. What Bennett objects to is not the mere occurrence of an allegedly unfair vote, but the state's decision *to give effect* to that vote. And obviously, the legal effectiveness of the 1996 vote—*i.e.,* whether a constitutional convention will take place—is something that will, or will not, happen in the future. Thus, we conclude that Bennett seeks prospective, not retrospective, relief. *Cf. Goodisman v. Lytle,* 724 F.2d 818, 820 (9th Cir.1984) (holding that Eleventh Amendment does not bar a suit by a public employee seeking reinstatement, despite the fact that the unconstitutional termination was already completed).

Further, a decision by this court that the Eleventh Amendment bars this suit would be contrary to the decisions of several other circuits which, while not explicitly addressing the Eleventh Amendment, decided the constitutionality of completed election errors. *E.g., Roe v. Alabama,* 43 F.3d 574 (11th Cir.1995); *Curry v. Baker,* 802 F.2d 1302 (11th Cir.1986); *Griffin v. Burns,* 570 F.2d 1065 (1st Cir.1978). While these cases did not directly confront the Eleventh Amendment question we decide today, we decline to suggest that those other courts acted in the absence of federal jurisdiction. Accordingly, we reject Yoshina's Eleventh Amendment argument.

Having surmounted the jurisdictional barriers, we now turn to the merits.

### III.

Bennett makes two broad constitutional attacks on the 1996 convention vote. First, he argues that *Yoshina I* was a totally unforeseeable interpretation of the state's election laws and, therefore, amounted to a denial of substantive due process. Conceding that the Hawaii Supreme Court is the ultimate arbiter of Hawaii law and that the court

had never before ruled on whether blank ballots counted in a constitutional convention vote, Bennett nonetheless argues that the past election practice was sufficiently clear that voters were unfairly surprised by *Yoshina I*. He also points to the misinformation distributed by the state as evidence of the voters' surprise.

Second, Bennett argues that counting blank ballots as votes against the constitutional convention question violates the First Amendment. He contends that the Hawaii Supreme Court effectively re-wrote voters' abstentions into "no" votes and that this re-writing amounted to unconstitutionally coerced speech.

■ We first postulate two assumptions that must guide the constitutional inquiry before us. First, states have considerable freedom to design their own election laws. *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992). The Supreme Court has long held that the structure of a state's internal democratic processes is a "political question" beyond the ken of judicial review. *Baker v. Carr*, 369 U.S. 186, 218–226, 82 S.Ct. 691, 710–15, 7 L.Ed.2d 663 (1961) (citing cases). Although federal courts may invalidate state election laws that deny some voters equal protection of the law, *Reynolds v. Sims*, 377 U.S. 533, 568, 84 S.Ct. 1362, 1384–85, 12 L.Ed.2d 506 (1964), unduly burden free speech, *Anderson v. Celebrezze*, 460 U.S. 780, 788–90, 103 S.Ct. 1564, 1569–71, 75 L.Ed.2d 547 (1983), or violate a federal statute, *Foster v. Love*, —— U.S. ——, ——, 118 S.Ct. 464, 467, 139 L.Ed.2d 369 (1997), we must normally defer to the states' regulatory interests when these federal rights are not implicated. *Cf. Timmons v. Twin Cities Area New Party*, —— U.S. ——, ——, 117 S.Ct. 1364, 1369, 137 L.Ed.2d 589 (1997) (recognizing states' regulatory interests).

Second, the Hawaii Supreme Court is by definition the final arbiter of Hawaii law. *Johnson v. Fankell*, —— U.S. ——, ——, 117 S.Ct. 1800, 1804, 138 L.Ed.2d 108 (1997). We are powerless to review that court's decision in *Yoshina I*, even if we thought it was wrong or contrary to general principles of election laws. Insofar as Bennett's suit is a backhanded critique of the merits of *Yoshina I*, we should be clear that we are unwilling and unable to indulge this.

With these general principles in mind, we now turn to Bennett's constitutional claims.

### A.

■ Bennett's first claim is that Hawaii's unforeseeable departure from past election practices was a denial of substantive due process.

In *Bates v. Jones*, 131 F.3d 843 (9th Cir. 1997) (en banc), we recently considered what restraints due process places on a state's election laws. In *Bates*, we upheld a California term limits initiative against the claim that the initiative "did not provide California voters with sufficient notice that the Proposition imposed lifetime limits" on officeholders. *Id.* at 846. We assumed, "without deciding, that a federal court may determine whether a state has given adequate notice to its voters in connection with a statewide initiative ballot measure...." *Id.* We then concluded that adequate notice existed, assuming any was needed. *Id.*

We agree with Bennett that *Bates* does not resolve the substantive due process claim in this case. First, *Bates* did not actually decide whether voters must receive notice of what they are voting on—it merely assumed so *arguendo*. Second, the notice at issue in *Bates* is of a completely different kind from the notice at issue in this case. In *Bates*, the court dealt with whether voters had adequate notice of the substantive content of what they were voting on. The lack-of-notice argument asserted that federal courts could strike down voter initiatives whenever voters did not receive sufficient notice to understand what they were voting for or against. We deal here with a more modest due process claim. Bennett challenges only Hawaii's election procedures, and he argues only that voters need to understand *that they are voting*, not that the state must inform them of the substance of what they are voting on, or anything else. Thus, unlike *Bates*, this case concerns a procedural challenge to the administration of an election, and we can resolve this constitutional claim without inquiring into the content of the proposal to be

voted on. Accordingly, we put *Bates* to one side and turn to a different strand of Ninth Circuit precedent.

■ Several appellate courts, including our own, have held that an election is a denial of substantive due process if it is conducted in a manner that is fundamentally unfair. *E.g., Soules v. Kauaians for Nukolii Campaign Comm.,* 849 F.2d 1176, 1183–84 (9th Cir.1988). We have drawn a distinction between "garden variety" election irregularities and a pervasive error that undermines the integrity of the vote. *Id.* In general, garden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election. *Gold v. Feinberg,* 101 F.3d 796, 801 (2d Cir. 1996) (human error resulting in miscounting of votes, presence of ineligible candidates on ballot, and delay in arrival of voting machines); *Curry v. Baker,* 802 F.2d 1302, 1316 (11th Cir.1986) (allegedly inadequate state response to illegal cross-over voting); *Bodine v. Elkhart County Elec. Bd.,* 788 F.2d 1270, 1272 (7th Cir.1986) (mechanical and human error in counting votes); *Hendon v. North Carolina State Bd. of Elections,* 710 F.2d 177, 182 (4th Cir.1983) (technical deficiencies in printing ballots); *Gamza v. Aguirre,* 619 F.2d 449, 454 (5th Cir.1980) (negligent vote counting); *Hennings v. Grafton,* 523 F.2d 861, 864–65 (7th Cir.1975) (malfunctioning of voting machines); *Pettengill v. Putnam County R–1 School Dist.,* 472 F.2d 121, 122 (8th Cir.1973) (counting some votes that were illegally cast); *Powell v. Power* 436 F.2d 84 (2d Cir.1970) (non-party members mistakenly allowed to vote in congressional primary); *Johnson v. Hood,* 430 F.2d 610, 613 (5th Cir.1970) (arbitrary rejection of 10 ballots).

However, when election irregularities transcended garden variety problems, the election is invalid. In *Griffin v. Burns,* 570 F.2d 1065, the First Circuit dealt with Rhode Island's practice of counting absentee ballots in state primary elections. The established practice in the state was to count such ballots, and state election officials advertised to voters that absentee ballots would be counted in the primaries. *Id.* at 1067. However, after the vote, the Rhode Island Supreme Court invalidated the absentee ballots, finding them improper in primary elections. *Id.* at 1068. This ruling meant that 10 percent

of the total votes cast would not count. *Id.* at 1067.

The First Circuit ruled the primary unconstitutional. The court focused on the massive *ex post* disenfranchisement that the Rhode Island Supreme Court's ruling created, and it noted that the ruling would have been a total surprise to the typical voter. *Id.* at 1078–79.

*Roe v. Alabama,* 43 F.3d 574, also dealt with surprise to the voters and disenfranchisement. In that case, the prior Alabama practice had been not to count absentee ballots unless they were notarized and witnessed; but after the 1994 election, an Alabama court ordered the improperly submitted absentee ballots to be counted. The Eleventh Circuit ruled the election fundamentally unfair, citing two theories: first, that Alabama was diluting the votes of those who had submitted proper ballots; and second, that Alabama had disenfranchised those people who would have voted absentee, but were deterred from doing so because they did not want to expend the effort to obtain notarization and witness validation of their ballots.

The limits of *Griffin* and *Roe* are demonstrated by *Partido Nuevo Progresista v. Barreto Perez,* 639 F.2d 825 (1st Cir.1980). In *Barreto Perez,* the court upheld the Supreme Court of Puerto Rico's decision to count mismarked ballots, notwithstanding the surprise this created for the voters. The court rejected that vote "dilution" could be a constitutional violation, reasoning that counting *more* votes than had previously been permitted did not *dis*enfranchise anyone. *Id.* at 828. The court also noted that, on the facts of *Barreto Perez,* there was no reliance by anyone on the previously understood election practice because no one could really have "relied" on the assumed invalidity of ballots in which the mark was drawn slightly outside of the printed rectangle. *Id.*

■ A general pattern emerges from all of these cases taken together. Mere fraud or mistake will not render an election invalid. However, a court will strike down an election on substantive due process grounds if two elements are present: (1) likely reliance by voters on an established election procedure

and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures.[3]

It is immediately apparent that neither element is present in this case. As in *Barreto Perez*, one requires a vivid imagination to see how voters could have "relied" on an understanding that blank ballots would not be counted. Citizens who wished to vote "yes" or "no" were presented with a clear way to do so. Voters who didn't care simply left the question blank. It is beyond belief to suggest that thousands of voters who left the convention question blank were secretly relying on the hope that their votes would not be counted, and that they would have voted "yes" had they foreseen the decision in *Yoshina I*. They did not vote because they did not care or did not care enough to do so.

Further, there was no disenfranchisement or meaningful vote dilution in this case. Every ballot submitted was counted, and no one was deterred from going to the polls. The massive disenfranchisement of absentee voters present in *Griffin* and the deterrence of people who would have voted in *Roe* are simply not present here.

In the end, the Hawaii Supreme Court's decision in *Yoshina I* was merely a clarification of the state's election laws: Hawaii used to interpret voter indifference as a reason neither for nor against amending the state constitution, but now interprets voter indifference as a reason not to convene a constitutional convention.[4] This *ex post* clarification of the state's election laws possibly amounts, at worst, to a garden variety election irregularity, but is hardly a pervasive error that undermines the integrity of the vote. *Soules*, 849 F.2d at 1183–84. Accordingly, we reject Bennett's substantive due process challenge.

## B.

■ Bennett's second, separate constitutional challenge is based on the First Amendment. He argues that Hawaii's policy of putting all questions on the same physical ballot,[5] when combined with *Yoshina I*'s method for calculating a majority, "coerces" votes in violation of the First Amendment. Bennett correctly observes that the combination of these rules effectively prevents Hawaii voters from abstaining solely on the constitutional convention question: Provided the voter turns in a ballot, that ballot will have a legal effect on the constitutional convention question, regardless of whether the voter answered "yes," "no," or not at all. In Bennett's view this coerces the citizens to vote; and, because blank ballots have the same effect as "no" votes under the rule announced in *Yoshina I*, this is content-based speech discrimination.

The central problem with Bennett's First Amendment claim is his inability to distinguish between a state's forcing someone to vote and a state's deciding not to bother with a constitutional convention unless most of the citizens express an interest in one. It is perfectly constitutional for a state to demand that a proposition win not only a majority of the votes cast, but a majority of all the votes that could have been cast. *Gordon v. Lance*, 403 U.S. 1, 7, 91 S.Ct. 1889, 1892–93, 29 L.Ed.2d 273 (1971); *Gray v. Town of Darien*, 927 F.2d 69, 70 (2d Cir.1991); *Hall v. Thornton*, 445 F.2d 834, 835 (4th Cir.1971). That is not very different from requiring that a proposition win a majority of all the votes that could have been cast by everyone who actually went to the polls—which is what Hawaii does. In short, Hawaii is not forcing anybody to vote. It is just deciding not to hold a constitutional convention if the majority of voters either don't want one or don't care.

---

**3.** This is not an exhaustive description of electoral problems that might be fundamentally unfair. *See, e.g., Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir. Unit B) (entire electorate disenfranchised when legally required election did not occur); *Griffin*, 570 F.2d at 1080 ("outrageous racial discrimination" requires invalidating an election "simply for its lack of integrity").

**4.** Bennett and Yoshina disagree on whether this issue has been outcome determinative in any

past election on whether to convene a constitutional convention. The record does not solidly support either side.

**5.** It is unclear if Hawaii election officials are required to do this. Bennett states that Haw. Rev.Stat. § 11–137 mandates that all questions appear on the same physical ballot, but that statute merely prohibits the exhibition or removal of ballots from the polling place.

Nor does Hawaii impermissibly convert blank ballots into "no" votes. *See Burdick,* 504 U.S. at 438, 112 S.Ct. at 2065–66 (upholding the reasonable regulation of speech on election ballots, but concluding that states may not "require voters to espouse positions they do not support"). Under Hawaii's procedure, blank votes are counted as blank and communicated to the world as blank, so the expressive content of the voter's blank ballot is not altered. What Bennett is really complaining about is that *Yoshina I* 's definition of a majority of "ballots cast" makes it difficult for "yes" votes to prevail. But that has nothing to do with speech.

We reject Bennett's free speech claim.

### IV.

Having concluded that the Hawaii Supreme Court's decision in *Yoshina I* did not violate any voter's free speech or substantive due process rights, we reverse the district court's grant of summary judgment for Bennett in No. 97–16408, and remand with instructions to enter summary judgment in favor of Yoshina. We vacate the district court's injunction ordering a new election on the constitutional convention question and the stay of the injunction pending appeal.

Our disposition of the merits also resolves the remaining issues before us. In No. 97–16543, Bennett cross-appeals the district court's order for a new vote, seeking an order requiring Hawaii to certify that the constitutional convention question passed. In Nos. 97–16540 and 97–16596, the AFL–CIO appeals the district court's denial of its motion to intervene. We dismiss these three appeals as moot. Yoshina shall recover his costs on appeal from Bennett. Bennett and the AFL–CIO shall bear their own costs on appeal.

**REVERSED and REMANDED in part, VACATED in part, and DISMISSED in part.**