**MARRIOT INTERNATIONAL, INC., Plaintiff,**

v.

**THE MITSUI TRUST & BANKING CO., LTD., Defendant.**

**No. CIV. 98–00025 ACK.**

United States District Court, D. Hawaii.

June 11, 1998.

Michael W. Garrison, Jr., Rush Moore Craven Sutton Morry & Beh, Honolulu, HI, Mark W. Wood, Patrick Lynch, O'Melveny & Myers LLP, Los Angeles, CA, Noah J. Silverman, Bethesda, MD, for plaintiff.

Paul Alston, Alston Hunt Floyd & Ing, Honolulu, HI, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S MOTION FOR STAY

KAY, Chief Judge.

This case presents the issue of whether a federal district court has subject matter jurisdiction to determine claims regarding the management of a hotel in the event of a foreclosure sale of the hotel, when a state court has already denied the plaintiff's motion to intervene in a foreclosure action instituted by the defendant mortgagee regarding the sale of the hotel.

### BACKGROUND

#### A. The Management and Mortgage Agreements

This action arises out of Plaintiff Marriott International's ("Marriot") management contract for the Maui Marriot Resort on Kaanapali Beach, Maui ("the Hotel"). In 1980, Marriot and others built the Hotel and entered into a management agreement that gave Marriot exclusive use, control and management of the Hotel for up to 75 years. At the time, the Transfer Certificate of Title ("TCT") listed as an encumbrance, "Marriot Corporation, to manage the Maui Marriot Resort." In 1986, Marriot and the other owners of the Hotel sold the Hotel and underlying real estate to Azabu Buildings Co., Ltd. ("Azabu"). At that time, Azabu entered into a management agreement ("Management Agreement") that provided that Marriot would continue to manage the Hotel for up to 60 years. In 1988, the Management Agreement was amended and restated. *See* Compl. Exh. C. The Management Agreement provides that Marriot shall have a right of first refusal to purchase or lease the Hotel. *Id.* at ¶ 19.01.

In 1990, Azabu negotiated with Defendant Mitsui Trust & Banking Co., Ltd. ("Mitsui") for a loan secured by various Azabu properties, including the Hotel. Pursuant to the management agreement between Marriot and Azabu, Azabu was required to obtain Marriot's approval for the mortgage. Marriot consented to the mortgage in exchange for a Consent, Nondisturbance, and Subordination Agreement with Mitsui ("the 1990 Agreement"), which is the subject of this action. The 1990 Agreement provides in relevant part: "If a mortgagee comes into possession of the Hotel by virtue of a foreclosure on its Mortgage or an assignment of the Ground Lease in lieu of foreclosure, the Management Company shall not be disturbed in its rights to peaceably occupy the Hotel in accordance with the Management Agreement...." Compl. Exh. E at ¶ 2.3.

#### B. The Foreclosure Action

By 1997, Azabu had defaulted on the loan from Mitsui. On December 17, 1997, Mitsui commenced a foreclosure action in the Circuit Court for the Second Circuit for the State of Hawaii ("the Foreclosure Action") and, the same day, obtained an order authorizing the sale of the Hotel. On December 22, 1997, Marriot filed a motion in the Foreclosure Action seeking to intervene, and, on January 6, 1998, that motion was denied. In its order denying Marriot's motion, the court stated that Marriot "shall continue to manage the Hotel pursuant to the 1988 Management Agreement under the direction of the Commissioner until the foreclosure sale herein of the Hotel." Pl. Op. Exh. A at 2. Marriot has appealed the denial of its motion to intervene; that appeal is currently pending before the Hawaii Supreme Court.

#### C. The Filing of this Action

On January 12, 1998, Marriot filed this action in this Court. Marriot alleged anticipatory breach of contract, tortious breach of contract, breach of implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, intentional interference with contractual relations, and negligent interference with contractual relations. Marriot seeks specific performance, declaratory relief, and damages. Specifically, Marriot seeks a declaration of each party's rights under the Management Agreement, the TCT, the mortgage, and the 1990 Agreement. Marriot also seeks specific performance "requiring Mitsui Trust to offer Marriot a right of first refusal

to lease or purchase the Hotel, ... and to ensure that any subsequent purchaser or grantee takes title subject to Marriot's right to occupy and operate the Hotel in accordance with the Management Agreement." Marriot also requests "an Order that any third-party purchaser or grantee of the Hotel takes title subject to Marriot's right to continue to manage the Hotel pursuant to the Management Agreement."

### D. The Land Court Action

Following the institution of this action, Mitsui filed a proceeding in Land Court to expunge from the TCT the notation regarding Marriot's management of the Hotel ("the Land Court Action"). Marriot filed a motion in that action to stay that action pending the outcome of this action. On April 9, 1998, the Land Court denied Marriot's motion for a stay. On April 21, 1998, Marriot filed a motion for leave to amend its answer to assert a counterclaim seeking amendment of the TCT to reflect the amendment and assignment of the Management Agreement subsequent to 1980. On April 29, 1998, the Land Court granted Mitsui's motion for summary judgment, holding that the right to manage the Hotel does not "affect title." Marriot's motion for leave to amend its answer remains pending.

### E. Procedural History

On March 4, 1998, Mitsui filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On April 17, 1998, Mitsui filed a motion for stay of the proceedings in the alternative. On May 8, 1998, Marriot filed oppositions to Mitsui's two motions. On May 15, Mitsui filed replies in support of its motions. The Court heard oral arguments on May 26, 1998.

### STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1), Federal Rules of Civil Procedure, the plaintiff's allegations are not presumed to be truthful, and the plaintiff has the burden of proof that jurisdiction exists. *Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corporation,* 594 F.2d 730, 733 (9th Cir.

1979). "[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency," whereupon the plaintiff must "present affidavits or any other evidence necessary to satisfy its burden." *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989).

### DISCUSSION

Mitsui first argues that the Court has no jurisdiction over the subject matter in this case pursuant to the "*Rooker/Feldman* doctrine" because Marriot is challenging a decision in the Foreclosure Action, or at least that the issues in the Foreclosure Action are inextricably intertwined with the issues in this action.

### 1. The *Rooker–Feldman* Doctrine

The *Rooker/Feldman* doctrine holds that "a losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Bennett v. Yoshina,* 140 F.3d 1218, 1223 (9th Cir. 1998) (citation omitted); *see also District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). "The Ninth Circuit law is clear that the *Rooker/Feldman* doctrine applies to judgments from any state court, regardless of whether the judgment is on appeal." *In re Audre, Inc.,* 216 B.R. 19, 28 (9th Cir. B.A.P. 1997).

The Ninth Circuit has explained, "The rationale behind this doctrine is that the only federal court with the power to hear appeals from state courts is the United States Supreme Court." *Bennett,* 140 F.3d at 1223 (citation omitted). An additional rationale for this doctrine is that "any other rule would result in a waste of judicial resources and unnecessary friction between state and federal courts." *Worldwide Church of God v. McNair,* 805 F.2d 888, 891 (9th Cir.1986). The Ninth Circuit has observed that "*Rooker–Feldman* is a jurisdictional doctrine, rather than a res judicata doctrine." *Olson*

*Farms, Inc. v. Barbosa,* 134 F.3d 933, 937 (9th Cir.1998).[1]

The Rooker–Feldman doctrine precludes jurisdiction where claims are "inextricably intertwined" with a state court's decision in a particular case. *See* Feldman, 460 U.S. at 483 n. 16, 103 S.Ct. 1303. The Ninth Circuit has explained:

> [C]laims are "inextricably intertwined" if the district court must "scrutinize not only the challenged rule itself, but the [state court's] application of the rule...." If, in order to resolve the claim, "the district court would have to go beyond mere review of the state rule as promulgated, to an examination of the rule as applied by the state court to the particular factual circumstances of [the plaintiff's] case," then the court lacks jurisdiction.

*McNair,* 805 F.2d at 892 (quoting *Razatos v. Colorado Supreme Court,* 746 F.2d 1429, 1433 (10th Cir.1984)).

### 2. Application of Rooker/Feldman

In this case, Plaintiff seeks specific and declaratory relief and damages based on the 1990 Agreement. The subject of this dispute is the following clause: "If a mortgagee comes into possession of the Hotel by virtue of a foreclosure on its Mortgage or an assignment of the Ground Lease in lieu of foreclosure, the Management Company shall not be disturbed in its rights to peaceably occupy the Hotel in accordance with the Management Agreement...." Compl. Exh. E at ¶ 2.3. The basis for Marriot's claim is that this clause requires Mitsui to obtain an agreement from any purchaser of the Hotel that acquisition under the foreclosure sale will be subject to the Management Agreement and that Marriot will continue to manage the Hotel. Mitsui, on the other hand, interprets this clause to require that Mitsui permit Marriot to continue managing the Hotel only so long as Mitsui possesses the Hotel, including in the event that Mitsui purchases the Hotel at a foreclosure sale. Mitsui believes that, under the 1990 Agreement, it may sell the Hotel to a third party without obtaining any agreement from that party regarding Marriot's management of the Hotel or the Hotel continuing to be subject to the Management Agreement.

Mitsui has already instituted a foreclosure action, in which Marriot has attempted unsuccessfully to intervene based on the 1990 Agreement. Following the foreclosure court's denial of Marriot's motion to intervene (the appeal of which is pending), that court issued an order stating that, following a confirmation of a sale, the commissioner may take "such steps as may be necessary to exclude" all persons managing the Hotel under the authority of Azuba, "[p]rovided, however, the Commissioner shall take no action to oust Marriot as manager if either Mitsui Trust or Marriot is the purchaser of the Hotel." Mitsui Mem., Exh. 8 at 10, ¶ 7. In other words, the foreclosure court has apparently adopted Mitsui's view of the 1990 Agreement.

Marriot's claims in this case are inextricably intertwined with the foreclosure action. Although the *Rooker/Feldman* doctrine does not bar a federal district court's consideration of claims brought by a person who was not a party to the state action, it

---

1. Plaintiffs argue that the Court should employ solely a res judicata analysis. To support this proposition, they cite *Robinson v. Ariyoshi,* 753 F.2d 1468, 1472 (9th Cir.1985), *vacated on other grounds,* 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986). The *Robinson* court recognized, however, that the Ninth Circuit cases relying solely on a res judicata analysis came after *Rooker* but before *Feldman. Id.* Following *Feldman,* a court must also consider whether the issues are inextricably intertwined with the prior state court decision. *Id.* Although these considerations are similar, they are not the same. Furthermore, as discussed below, abstention would likely be proper under a res judicata analysis because the foreclosure court apparently addressed the same issue in this case: Marriot's rights under the 1990 Agreement regarding the foreclosure purchase of the Hotel by a third party. The Court also notes that in *Robinson,* the court addressed constitutional claims that were not considered by a state court, whereas in this case, Marriot brings state claims under diversity jurisdiction. *See Hart v. Comerica Bank,* 957 F.Supp. 958, 973 (E.D.Mich.1997) ("Indeed, it is clear that, as a matter of federalism and federal-state comity, the argument for applying the *Rooker–Feldman* Doctrine to diversity cases is even stronger [than the argument for applying it to federal question cases], since, in such an instance, the inferior federal court would otherwise be acting as a court of appeal over state court decisions about state law.").

may apply when a person attempts unsuccessfully to intervene in a state action. In *Wright v. Tackett*, for example, the court concluded that there was no subject matter jurisdiction under *Rooker/Feldman* based on state court actions in which the plaintiff had unsuccessfully attempted to intervene. 39 F.3d 155, 157–58 (7th Cir.1994). In that case, the plaintiff had moved to intervene in two foreclosure actions on the grounds that he was a joint owner of the properties that were the subject of those actions. *Id.* at 156. The plaintiff subsequently brought suit in federal court alleging that the defendants conspired to violate his civil rights when they took actions to foreclose against his property. *Id.* The court applied the *Rooker/Feldman* doctrine and concluded that the plaintiff "[i]n essence ... asked the federal district court to review the state court's denial of his requests to intervene in the foreclosure actions." *Id.* at 157.

Like the plaintiff in *Wright*, Marriot in essence asks this court to review the denial of its request to intervene in the foreclosure action. Marriot presented its interpretation of the Management Agreement and the 1990 Agreement to the foreclosure court, and that court determined that the foreclosure should proceed without Marriot's involvement. It apparently agreed with Mitsui that a third-party purchaser would not be bound by the Management Agreement. Thus, Plaintiff's breach of contract claims are inextricably intertwined with the foreclosure action. *Cf. Postma v. First Federal Sav. & Loan of Sioux,* 74 F.3d 160, 161, 162 (8th Cir.1996) (finding no subject matter jurisdiction under *Rooker/Feldman* for claims of, inter alia, breach of contract against a loan company because foreclosure action court issued judgment in favor of loan company and against the federal plaintiff); *Smith v. Weinberger,* 994 F.Supp. 418, 423 (E.D.N.Y.1998) (finding no subject matter jurisdiction over claims that defendant defrauded plaintiff in obtaining a property, because the defendant had already foreclosed on the property in a state foreclosure action).

Furthermore, this action is based on injury caused by the denial of Marriot's motion to intervene in the foreclosure action. If the foreclosure court permitted Marriot to intervene, and that court agreed with Marriot that any purchaser of the Hotel is bound by the Management Agreement, then there would likely be no claim for breach of Mitsui's contract here.[2] The injury in this case is not distinct from the foreclosure action. *See Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir.1996) ("[T]he fundamental and appropriate question to ask [under the *Rooker/Feldman* doctrine] is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.").

In light of the foregoing, the Court finds that abstention is proper regarding all of Marriot's claims. Mitsui points out that, under its interpretation of the 1990 Agreement (and apparently the interpretation of the foreclosure court), Marriot's only claim for damages would arise in the event that Mitsui, *while in possession of the Hotel,* precluded Marriot from managing the Hotel or otherwise interfered with Marriot's management of the Hotel. Marriot has not alleged that Mitsui has taken any such steps or that Mitsui stated that it will in the future. In other words, Marriot has not brought such a claim before this Court; such a claim is unrelated to Marriot's alleged right to manage the Hotel following a foreclosure sale to a third party. Thus, this Order does not preclude Marriot from bringing such a claim in the future. Furthermore, nothing in this Order precludes Marriot from bringing any of its claims in state court.

In light of the discussion above, the Court has no jurisdiction over Marriot's claims and cannot address any additional issues raised by the parties. Mitsui's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and Mitsui's motion for a stay are moot.

---

2. Marriot has alleged that it has already suffered damages because it has had difficulty with future bookings due to the uncertainty of its management of the Hotel. These alleged damages, however, would likely have been insignificant if the foreclosure court had granted instead of denied Marriot's motion to intervene less than one month after Mitsui instituted that action.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss for lack of subject matter jurisdiction. The Court DENIES AS MOOT Defendant's motion to dismiss under Rule 12(b)(6) and Defendant's motion for stay.

IT IS SO ORDERED.